**WINTERLAND CONCESSIONS CO., etc. et al., Plaintiffs,**

v.

**Robert GEISEL et al., Defendants.**

**No. 81 C 573.**

United States District Court, N. D. Illinois, E. D.

March 13, 1981.

---

Jane Shay Lynch and James N. Videbeck, Kegan, Kegan & Berkman, Chicago, Ill., Michael L. Krassner, San Francisco, Cal., for plaintiffs.

Jeffery Neal Cole Ltd., Chicago, Ill., for Robert and Randy Geisel, David Franz.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On February 9, 1981 plaintiffs sought the issuance of a temporary restraining order directed against a number of unidentified persons (in the corporate as well as the individual sense), referred to in the Complaint only as various Does and ABC Companies.[1] In substance, the Complaint alleged that those unidentified persons would sell unauthorized merchandise (principally T-shirts and jerseys bearing the likeness and other indicia of the REO Speedwagon group and its individual members) in the vicinity of the Chicago Amphitheatre, in violation of rights of plaintiffs, REO Speedwagon group and Winterland Concessions Co. (the exclusive licensee of REO Speedwagon for the sale of such merchandise).

Plaintiffs sought to ground their action on the Lanham Act (15 U.S.C. §§ 1051 ff.) and the doctrine of pendent jurisdiction. This Court denied plaintiffs' *ex parte* request for temporary injunctive relief because, absent the designation of *any* specific defendants and given the claim that *presently unknown* persons would engage in a *future* violation of plaintiffs' rights, there was no "case" or "controversy" within the meaning of Article III of the United States Constitution. See *Flast v. Cohen*, 392 U.S. 83, 94–97, 88 S.Ct. 1942, 1949–1951, 20 L.Ed.2d 947 (1968); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937). Accordingly this Court determined that it lacked subject matter jurisdiction at that time.

During colloquies in open court on plaintiffs' *ex parte* application for the temporary restraining order, the Court informed plaintiffs' counsel that if and when they moved to amend the Complaint to name one or more specific defendants, the Court would look favorably on issuance of a temporary restraining order ("TRO") as to such named defendants.[2] In addition, the Court would then be prepared to issue an order, in the form tendered by plaintiffs, for the seizure of any claimed "infringing merchandise" attempted to be sold or held for sale by any defendant served with the TRO or by any others coming within its ambit. In that respect the Court specifically advised counsel that such an order, if issued, would not authorize seizure from other individuals acting independently of a named defendant.

---

1. As originally filed, the Complaint named no known defendant.

2. In accordance with Fed.R.Civ.P. ("Rule") 65(d) such an order would bind the parties and their respective officers, agents, servants, employees and attorneys and those persons in active concert or participation with the parties who received actual notice of the order by personal service or otherwise.

At approximately 7:50 p. m. February 11, 1981 the Court received a telephone call from Ms. Jane Shay Lynch, counsel for the plaintiffs, advising that Don Horowitz and Earl Goldberg were selling unauthorized REO Speedwagon T-shirts near the Amphitheatre in conjunction with an REO Speedwagon concert. On plaintiffs' oral motion the Court (1) granted leave to amend the Complaint instanter to designate Messrs. Goldberg and Horowitz as defendants and (2) issued its TRO and seizure-authorization order against them in the form referred to in the preceding paragraph.

At approximately 10:30 p. m. the same evening, while the REO Speedwagon concert was still in progress inside the Amphitheatre, employees of the United States Marshal's Service seized a large quantity of unauthorized REO Speedwagon T-shirts from two automobiles and a van owned by Messrs. Robert Geisel, Randall Geisel and David Franz. Those three individuals had purchased the T-shirts for purposes of sale during the concerts scheduled for that and succeeding evenings, and they were near the Amphitheatre for that purpose when the T-shirts were seized from them. At approximately 11 p. m. the same evening plaintiffs' counsel telephoned the Court and advised that Thomas Geisel [3] was also selling or proposing to sell unauthorized T-shirts. On a like oral motion by plaintiffs the Court followed the identical procedure regarding Mr. Geisel as stated in the preceding paragraph as to Messrs. Goldberg and Horowitz.

Beginning February 13, 1981 and continuing on intermittent days thereafter, the Court held an evidentiary hearing for the sole purpose of determining the legality of the seizure of T-shirts from Messrs. Robert Geisel, Randall Geisel and David Franz. Based on the evidence adduced at the hearing the Court finds that plaintiffs have failed to prove that on February 11, 1981 Messrs. Robert Geisel, Randall Geisel and David Franz were:

(1) in active concert or participation with, or

(2) officers, agents, servants, employees or attorneys of, or

(3) aiding and abetting

either of Messrs. Horowitz and Goldberg. Accordingly the Court concludes that the "active concert or participation" requirement of Rule 65(d) has not been satisfied and that the T-shirts taken from Messrs. Geisel and Franz cannot be retained by plaintiffs and must be returned.

IT IS THEREFORE ORDERED that the T-shirts seized from Messrs. Robert Geisel, Randall Geisel and David Franz on February 11, 1981 and now in the custody of the United States Marshal for the Northern District of Illinois or in the possession of the plaintiffs or their counsel be returned to Messrs. Geisel and Franz forthwith.

---

**3.** Thomas, the father of Robert Geisel, was not in fact at the concert. Apparently Robert gave Thomas' name to the deputy Marshals when asked to identify himself.