AIDA ENGINEERING, LTD., PLAINTIFF  *v.* UNITED STATES, DEFENDANT, AND VERSON DIV. OF ALLIED PRODUCTS CORP., DEFENDANT-INTERVENOR

Court No. 93–12–00819

(Dated February 1, 1995)

*Arent, Fox, Kintner, Plotkin & Kahn (Stephen L. Gibson* and *Christine L. Herrell),* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Harold D. Lester, Jr.);* United States Department of Commerce *(Patrick V. Gallagher, Jr.),* of counsel, for defendant.

*Collier, Shannon, Rill & Scott (Paul C. Rosenthal* and *David C. Smith, Jr.),* for defendant-intervenor.

## MEMORANDUM AND ORDER

GOLDBERG, *Judge:* This matter comes before the Court on plaintiff's motion for judgment on the agency record. Defendant and defendant-intervenor oppose plaintiff's motion. Defendant-intervenor further moves for judgment on the agency record or, in the alternative, for dismissal of plaintiff's complaint.

## BACKGROUND

On February 16, 1990, the Department of Commerce ("Commerce") issued an antidumping duty order relating to mechanical transfer presses from Japan (the "Order"). 55 Fed. Reg. 5642. The Order defined mechanical transfer presses as:

> automatic metal-forming machine tools * * * [with multiple die stations] in which the workpiece is moved from station to station by *a transfer mechanism designed as an integral part of the press* and synchronized with the press action, whether imported as machines or parts suitable for use solely or principally with these machines. These presses may be assembled or unassembled.

*Id.* (Emphasis added).

On June 8, 1992, plaintiff Aida Engineering, Ltd. ("Aida") requested that Commerce exclude a certain mechanical press known as an FMX series cold forging press, with an optional transfer mechanism, from the scope of the Order. *Administrative Record ("AR") Doc.* 7 at 1. Aida asserted that the FMX press fell outside of the scope of the Order because it could be used without the transfer mechanism. *Id.* at 4–5. In other words, Aida claimed that the FMX press had a non-essential transfer mechanism, rather than one which was an integral part of the press. *Id.*

148

In response to Aida's request, on or about July 27, 1992, Commerce initiated a formal scope inquiry regarding the FMX press with the optional transfer mechanism. *AR Doc. 10* at 1. During the scope inquiry, Commerce learned that it had modified the Order specifically to cover automatic metal-forming machine tools with "a transfer mechanism designed as an integral part of the press." *AR Doc. 36* at 5; 55 Fed. Reg. 335, 336 (Jan. 4, 1990). Commerce found that it made the modification at the request of petitioners in order to distinguish between those presses that were designed to operate as self-contained production lines and those presses that were retrofitted with transfer mechanisms which allowed them to pass workpieces from one press to another. *AR Doc. 36* at 8; *AR Doc. 3* at 11. Hence, Commerce did not make the modification in order to distinguish between presses with essential transfer mechanisms and presses with non-essential transfer mechanisms. *Id.*

When Commerce investigated the FMX press which served as the subject of Aida's scope request, it found that the FMX press was designed so that it could operate as a self-contained production line. *AR Doc. 36* at 8. More specifically, Commerce found that the FMX press was "custom-designed" as "'an automatic metal-forming machine tool with multiple die stations, in which the workpiece is moved from station-to-station by a transfer mechanism' that is 'synchronized with the press action.'" *Id.* Because the transfer mechanism was *designed as* an integral part of the FMX press, Commerce determined that it was of no consequence whether the transfer mechanism was in fact used. *Id.* On November 23, 1993, Commerce issued a final scope determination, ruling "that the cold forging FMX model press is within the scope of the order on mechanical transfer presses from Japan." *Id.* at 1.

On January 12, 1994, Aida wrote a letter to Commerce requesting clarification of the scope determination. *AR Doc. 38* at 1. Aida asserted that the language used in Commerce's determination was too broad. As a result, Aida believed that the Order could be read to include all FMX model presses, including those *without* the optional transfer mechanism. *Id.*

On June 9, 1994, Commerce responded to Aida's request as follows:

> Our ruling stated that we considered the transfer feed mechanism to be an integral part of the FMX press because it was part of the machines [sic] custom design. The record of the scope inquiry in this case indicates that all FMX series presses have a transfer feed mechanism as an integral part of their design. If you believe that importation of the press without the physical presence of the transfer feed mechanism represents a materially different case than the one already decided by the Department you are welcome to file a request for scope clarification explaining the basis for this position.[1]

---

[1] *Annex 1* to *Petitioner's Memorandum of Points and Authorities in Support of Plaintiff's 56.2 Motion for Judgment on the Agency Record ("Annex 1").*

Aida did not file a request for scope clarification regarding the FMX press without transfer mechanism; therefore, Aida did not directly present Commerce with the issue of whether other variations of the FMX press fall within the scope of the Order. Instead, Aida decided to pursue this action before the Court.

In this action, Aida does not contest Commerce's scope determination to the extent that it holds that the FMX press with a transfer mechanism falls within the scope of the Order. Rather, Aida complains that Commerce's determination is overbroad in that it holds that all FMX presses, including those without the optional transfer mechanism, fall within the scope of the Order. Defendant and defendant-intervenor have responded to Aida's action by claiming, *inter alia,* that no case or controversy exists as to the whether Commerce's scope determination applies to the FMX press with an optional transfer mechanism, and that the Court does not have the power to issue an opinion advising as to whether or not the scope determination should be applied to an FMX press without an optional transfer mechanism.

## DISCUSSION

Plaintiff asserts that the Court may exercise its jurisdiction pursuant to 19 U.S.C. § 1516a, which gives the Court jurisdiction to review certain scope determinations made by Commerce. Plaintiff fails to acknowledge, however, that the United States Constitution and 28 U.S.C. § 2637(d) also govern the manner in which this Court may exercise its power.

### A. *Cases or Controversies.*

The United States Constitution limits the exercise of the power of federal courts to actual "cases" and "controversies." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239 (1937); *see also Torrington Co. v. United States,* 15 CIT 370, 371 (1991). In this instance, the Court finds that no case or controversy exists as to whether Commerce's November 23, 1993 scope determination covers a particular FMX press.

Commerce issued a scope determination regarding the custom designed FMX press, with the transfer mechanism, about which Aida inquired. This is demonstrated by the fact that Commerce recognized that Aida had only requested exclusion of *"a certain* cold forging FMX model press" from the Order. *AR Doc. 36* at 2 (emphasis added). In its scope determination, Commerce ruled "that *the* cold forging FMX model press is within the scope of the order on mechanical transfer presses from Japan." *AR Doc. 36* at 1 (emphasis added). When asked to clarify its determination, Commerce confirmed that it had included the FMX press within the scope of the Order because it "considered the transfer feed mechanism to be an integral part of * * * the machines [sic] *custom* design." *Annex 1* (emphasis added). Because neither Aida nor defendant-intervenor Verson Division of Allied Products Corp. ("Verson") contest Commerce's determination in as much as it holds that the Order

covers the FMX press *with* the optional transfer mechanism, no case or controversy exists as to this issue.

Further, Aida's concern that the United States Customs Service may construe Commerce's scope determination to cover all FMX presses, regardless of whether they have an optional transfer mechanism, does not rise to the level of a justiciable controversy. This Court does not have the power to issue an opinion advising what the law would be under such a hypothetical set of facts. *Rose Bearings Ltd. v. United States,* 14 CIT 801, 802–03, 751 F. Supp. 1545, 1546–47 (1990). The Court will only review the ruling which Commerce made in a specific factual context; it will not decide questions concerning possible actions in other contexts. *See F.C.C. v. Pacific Foundation,* 438 U.S. 726, 734–35 (1978); *Rose Bearings,* 14 CIT at 802–03, 751 F. Supp. at 1546–47. In sum, because no case or controversy exists regarding Commerce's November 23, 1993 scope determination, the Court will not review that determination.

B. *Exhaustion of Administrative Remedies.*

Not only does lack of a case or controversy prevent the Court from reviewing Commerce's scope determination, the doctrine of exhaustion of administrative remedies also proscribes the Court from reviewing Commerce's determination at this time. In its role as a reviewing court, the Court would usurp an agency's function if it set aside an administrative determination on a ground not presented to the agency. *Nat'l Knitwear & Sportswear Assn. v. United States,* 15 CIT 548, 557, 779 F. Supp. 1364, 1372 (1991) (citations omitted). The Court would deprive the agency of the opportunity to consider the matter, make its ruling, and state the reasons for its actions. *Id.* Consequently, the Court requires a party to exhaust its administrative remedies, where appropriate, before bringing a civil action. 28 U.S.C. § 2637(d). Exhaustion of administrative remedies allows the agency and the parties to develop fully the administrative record upon which review is based. *Id.* (citing *Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C. Cir. 1984)). In addition, it avoids duplication of fact finding, and in some cases judicial involvement, thereby promoting judicial economy. *Id.*

In this instance, the Court finds that Aida has failed to exhaust its administrative remedies. Instead of pursuing an action in this Court, Aida could have filed a request with Commerce to determine whether an FMX press without a transfer mechanism falls within the scope of the Order; indeed, Commerce recommended this course of action to Aida in its June 9, 1994 letter. In response to Aida's request, Commerce could have conducted a comprehensive scope inquiry regarding the FMX press without a transfer mechanism. However, because Aida has failed to exhaust its remedies, and because Aida has not shown that any exception to the exhaustion doctrine applies in this instance, review at this time would be inappropriate.

CONCLUSION

Commerce ruled that a particular FMX press fell within the scope of its antidumping duty order. Because neither Aida nor Verson contest this in their motions for judgment on the agency record, no case or controversy exists as to this issue. Moreover, Aida has failed to exhaust its administrative remedies with regard to whether other variations of the FMX press also fall within the scope of Commerce's antidumping order. Therefore, the Court will not exercise jurisdiction as to this issue at this time. If Aida has further questions about the scope of the antidumping order, it should exhaust its remedies at the administrative level before bringing an action before this Court. Consequently, it is hereby

ORDERED that plaintiff's motion for judgment on the agency record is DENIED; it is further

ORDERED that defendant-intervenor's motion for judgment on the agency record is DENIED; and it is further

ORDERED that defendant-intervenor's motion for dismissal of plaintiff's complaint is GRANTED. Judgment will be entered accordingly.