## AETNA LIFE INSURANCE CO. *v.* HAWORTH ET AL.

No. 446.  Argued February 4, 1937.—Decided March 1, 1937.

*Mr. E. R. Morrison,* with whom *Messrs. Berkeley Cox* and *Douglas Stripp* were on the brief, for petitioner.

*Mr. Rees Turpin* for respondents.

Mr. Chief Justice Hughes delivered the opinion of the Court.

The question presented is whether the District Court had jurisdiction of this suit under the Federal Declaratory Judgment Act. Act of June 14, 1934, 48 Stat. 955; Jud. Code, § 274D; 28 U. S. C. 400.[1]

The question arises upon the plaintiff's complaint which was dismissed by the District Court upon the ground that it did not set forth a "controversy" in the constitutional sense and hence did not come within the legitimate scope of the statute. 11 F. Supp. 1016. The decree of dismissal was affirmed by the Circuit Court of Appeals. 84 F. (2d) 695. We granted certiorari. November 16, 1936.

---

[1] The Act provides:

"(1) In cases of actual controversy the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

"(2) Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith.

"(3) When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not."

From the complaint it appears that plaintiff is an insurance company which had issued to the defendant, Edwin P. Haworth, five policies of insurance upon his life, the defendant Cora M. Haworth being named as beneficiary. The complaint set forth the terms of the policies. They contained various provisions which for the present purpose it is unnecessary fully to particularize. It is sufficient to observe that they all provided for certain benefits in the event that the insured became totally and permanently disabled. In one policy, for $10,000, issued in 1911, the company agreed, upon receiving the requisite proof of such disability and without further payment of premiums, to pay the sum insured, and dividend additions, in twenty annual instalments, or a life annuity as specified, in full settlement. In four other policies issued in 1921, 1928 and 1929, respectively, for amounts aggregating $30,000, plaintiff agreed upon proof of such disability to waive further payment of premiums, promising in one of the policies to pay a specified amount monthly and in the other three to continue the life insurance in force. By these four policies the benefits to be payable at death, and the cash and loan values to be available, were to be the same whether the premiums were paid or were waived by reason of the described disability.

The complaint alleges that in 1930 and 1931 the insured ceased to pay premiums on the four policies last mentioned and claimed the disability benefits as stipulated. He continued to pay premiums on the first mentioned policy until 1934 and then claimed disability benefits. These claims, which were repeatedly renewed, were presented in the form of affidavits accompanied by certificates of physicians. A typical written claim on the four policies is annexed to the complaint. It states that while these policies were in force, the insured became

totally and permanently disabled by disease and was "prevented from performing any work or conducting any business for compensation or profit"; that on October 7, 1930, he had made and delivered to the company a sworn statement " for the purpose of asserting and claiming his right to have these policies continued under the permanent and total disability provision contained in each of them"; that more than six months before that date he had become totally and permanently disabled and had furnished evidence of his disability within the stated time; that the annual premiums payable in the year 1930 or in subsequent years were waived by reason of the disability and that he was entitled to have the policies continued in force without the payment of premiums so long as the disability should continue.

With respect to the policy first mentioned, it appears that the insured claimed that prior to June 1, 1934, when he ceased to pay premiums, he had become totally and permanently disabled; that he· was without obligation to pay further premiums and was entitled to the stipulated disability benefits including the continued life of the policy.

Plaintiff alleges that consistently and· at all times it has refused to recognize these claims of the insured and has insisted that all the policies had lapsed according to their terms by reason of the non-payment of premiums, the insured not being totally and permanently disabled at any of the times to which his claims referred. Plaintiff further states that taking loans into consideration four of the policies have no value and the remaining policy (the one first mentioned) has a value of only $45 as extended insurance. If, however, the insured has been totally and permanently disabled as he claims, the five policies are in full force, the plaintiff is now obliged to pay the accrued instalments of cash disability benefits for which two of the policies provide, and the insured

has the right to claim at any time cash surrender values accumulating by reason of the provisions for waiver of premiums, or at his death, Cora M. Haworth, as beneficiary, will be entitled to receive the face of the policies less the loans thereon.

Plaintiff thus contends that there is an actual controversy with defendants as to the existence of the total and permanent disability of the insured and as to the continuance of the obligations asserted despite the nonpayment of premiums. Defendants have not instituted any action wherein the plaintiff would have an opportunity to prove the absence of the alleged disability and plaintiff points to the danger that it may lose the benefit of evidence through disappearance, illness or death of witnesses; and meanwhile, in the absence of a judicial decision with respect to the alleged disability, the plaintiff in relation to these policies will be compelled to maintain reserves in excess of $20,000.

The complaint asks for a decree that the four policies be declared to be null and void by reason of lapse for nonpayment of premiums and that the obligation upon the remaining policy be held to consist solely in the duty to pay the sum of $45 upon the death of the insured, and for such further relief as the exigencies of the case may require.

*First.* The Constitution limits the exercise of the judicial power to "cases" and "controversies." "The term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less comprehensive than the latter, and includes only suits of a civil nature." Per Mr. Justice Field in *In re Pacific Railway Comm'n,* 32 Fed. 241, 255, citing *Chisholm* v. *Georgia,* 2 Dall. 419, 431, 432. See *Muskrat* v. *United States,* 219 U. S. 346, 356, 357; *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716, 723, 724. The Declaratory Judgment Act of 1934, in its limitation to "cases of actual controversy," manifestly

has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word "actual" is one of emphasis rather than of definition. Thus the operation of the Declaratory Judgment Act is procedural only. In providing remedies and defining procedure in relation to cases and controversies in the constitutional sense the Congress is acting within its delegated power over the jurisdiction of the federal courts which the Congress is authorized to establish. *Turner* v. *Bank of North America,* 4 Dall. 8, 10; *Stevenson* v. *Fain,* 195 U. S. 165, 167; *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 234. Exercising this control of practice and procedure the Congress is not confined to traditional forms or traditional remedies. The judiciary clause of the Constitution "did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 264. In dealing with methods within its sphere of remedial action the Congress may create and improve as well as abolish or restrict. The Declaratory Judgment Act must be deemed to fall within this ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.

A "controversy" in this sense must be one that is appropriate for judicial determination. *Osborn* v. *United States Bank,* 9 Wheat. 738, 819. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States* v. *Alaska S. S. Co.,* 253 U. S. 113, 116. The controversy must be definite and concrete, touching the legal relations of parties having

adverse legal interests. *South Spring Gold Co.* v. *Amador Gold Co.,* 145 U. S. 300, 301; *Fairchild* v. *Hughes,* 258 U. S. 126, 129; *Massachusetts* v. *Mellon,* 262 U. S. 447, 487, 488. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. See *Muskrat* v. *United States, supra; Texas* v. *Interstate Commerce Comm'n,* 258 U. S. 158, 162; *New Jersey* v. *Sargent,* 269 U. S. 328, 339, 340; *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70; *New York* v. *Illinois,* 274 U. S. 488, 490; *Willing* v. *Chicago Auditorium Assn.,* 277 U. S. 274, 289, 290; *Arizona* v. *California,* 283 U. S. 423, 463, 464; *Alabama* v. *Arizona,* 291 U. S. 286, 291; *United States* v. *West Virginia,* 295 U. S. 463, 474, 475; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 324. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. *Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra,* p. 263; *Tutun* v. *United States,* 270 U. S. 568, 576, 577; *Fidelity National Bank* v. *Swope,* 274 U. S. 123, 132; *Old Colony Trust Co.* v. *Commissioner, supra,* p. 725. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. *Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra,* p. 264.

With these principles governing the application of the Declaratory Judgment Act, we turn to the nature of the controversy, the relation and interests of the parties, and the relief sought in the instant case.

*Second.* There is here a dispute between parties who face each other in an adversary proceeding. The dispute relates to legal rights and obligations arising from the contracts of insurance. The dispute is definite and concrete, not hypothetical or abstract. Prior to this suit, the parties had taken adverse positions with respect to their existing obligations. Their contentions concerned the disability benefits which were to be payable upon prescribed conditions. On the one side, the insured claimed that he had become totally and permanently disabled and hence was relieved of the obligation to continue the payment of premiums and was entitled to the stipulated disability benefits and to the continuance of the policies in force. The insured presented this claim formally, as required by the policies. It was a claim of a present, specific right. On the other side, the company made an equally definite claim that the alleged basic fact did not exist, that the insured was not totally and permanently disabled and had not been relieved of the duty to continue the payment of premiums, that in consequence the policies had lapsed, and that the company was thus freed from its obligation either to pay disability benefits or to continue the insurance in force. Such a dispute is manifestly susceptible of judicial determination. It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.

That the dispute turns upon questions of fact does not withdraw it, as the respondent seems to contend, from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences. That is every day practice. Equally unavailing is respondent's contention that the dispute relates to the existence of a "mutable fact" and a "changeable condition—the state of the insured's health." The in-

sured asserted a total and permanent disability occurring prior to October, 1930, and continuing thereafter. Upon that ground he ceased to pay premiums. His condition at the time he stopped payment, whether he was then totally and permanently disabled so that the policies did not lapse, is not a "mutable" but a definite fact. It is a controlling fact which can be finally determined and which fixes rights and obligations under the policies. If it were found that the insured was not totally and permanently disabled when he ceased to pay premiums and hence was in default, the effect of that default and the consequent right of the company to treat the policies as lapsed could be definitely and finally adjudicated. If it were found that he was totally and permanently disabled as he claimed, the duty of the company to pay the promised disability benefits and to maintain the policies in force could likewise be adjudicated. There would be no difficulty in either event in passing a conclusive decree applicable to the facts found and to the obligations of the parties corresponding to those facts. If the insured made good his claim, the decree establishing his right to the disability benefits, and to the continuance of the policies in force during the period of the proved disability, would be none the less final and conclusive as to the matters thus determined even though a different situation might later arise in the event of his recovery from that disability and his failure after that recovery to comply with the requirements of the policies. Such a contention would present a distinct subject matter.

If the insured had brought suit to recover the disability benefits currently payable under two of the policies there would have been no question that the controversy was of a justiciable nature, whether or not the amount involved would have permitted its determination in a federal court. Again, on repudiation by

the insurer of liability in such a case and insistence by the insured that the repudiation was unjustified because of his disability, the insured would have "such an interest in the preservation of the contracts that he might maintain a suit in equity to declare them still in being." *Burnet* v. *Wells*, 289 U. S. 670, 680; *Cohen* v. *N. Y. Mutual Life Ins. Co.*, 50 N. Y. 610, 624; *Fidelity National Bank* v. *Swope, supra.* But the character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer. Whether the District Court may entertain such a suit by the insurer, when the controversy as here is between citizens of different States or otherwise is within the range of the federal judicial power, is for the Congress to determine. It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative. See *Gully* v. *Interstate Natural Gas Co.*, 82 F. (2d) 145, 149; *Travelers Insurance Co.* v. *Helmer*, 15 F. Supp. 355, 356; *New York Life Insurance Co.* v. *London*, 15 F. Supp. 586, 589.

We have no occasion to deal with questions that may arise in the progress of the cause, as the complaint has been dismissed *in limine.* Questions of burden of proof or mode of trial have not been considered by the courts below and are not before us.

Our conclusion is that the complaint presented a controversy to which the judicial power extends and that authority to hear and determine it has been conferred upon the District Court by the Declaratory Judgment Act. The decree is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*