**GAF BUILDING MATERIALS CORPORATION, Plaintiff– Appellant,**

v.

**ELK CORPORATION OF·DALLAS, Defendant–Appellee.**

No. 95–1549.

United States Court of Appeals, Federal Circuit.

July 18, 1996.

Samuel D. Rosen, Paul, Hastings, Janofsky & Walker, New York City, argued, for plaintiff-appellant.

Larry D. Carlson, Baker & Botts, L.L.P., Dallas, Texas, argued, for defendant-appellee.

Before PLAGER, LOURIE and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

GAF Building Materials Corporation appeals from the decision of the United States District Court for the Northern District of Texas dismissing its declaratory judgment action for lack of subject matter jurisdiction. *GAF Bldg. Materials Corp. v. Elk Corp.*, No. 3:94–2517 (N.D.Tex. Aug. 29, 1995). Because no actual case or controversy existed when GAF filed its action, we affirm.

## BACKGROUND

In October 1993, Elk Corporation of Dallas received a Notice of Allowance from the United States Patent and Trademark Office ("PTO") for its pending design patent application directed to a laminated asphalt roofing shingle. Elk paid the issue fee on November 17, 1993. On December 8, 1993, Elk sent GAF a letter asserting that GAF's sales of its roofing shingle would "constitute an infringement of Elk Corporation's forthcoming United States design patent." In its letter, Elk demanded that GAF "cease and desist from all infringing activities with respect to this United States design patent when issued." In response, on January 13, 1994, GAF filed a civil action in the District of New Jersey alleging that Elk's design patent was "about to issue" and seeking, *inter alia,* a declaratory judgment that the "patent" was invalid and not infringed.

The relevant Design Patent 344,144 issued on February 8, 1994. That same morning Elk sued GAF for patent infringement in the Northern District of Texas. Later that day, GAF amended its complaint in the District of New Jersey to allege that Elk's design patent had issued. GAF did not move for permission to file this supplemental pleading as required by Fed.R.Civ.P. 15(d).

In December 1994, Elk counterclaimed in the New Jersey action for infringement of the '144 patent. In addition, Elk moved to dismiss GAF's declaratory judgment action for lack of subject matter jurisdiction. GAF responded that jurisdiction was proper under 28 U.S.C. § 1338 (1994). The court granted Elk's motion, holding that there was no actual case or controversy, and thus no subject matter jurisdiction, because the '144 patent had not issued when the suit was commenced. The court further held that the subsequent issuance of the patent after the

filing of the complaint did not cure the jurisdictional defect. Rather than dismiss the case, however, the court transferred it to the Northern District of Texas.

Following the transfer, the United States District Court for the Northern District of Texas severed Elk's infringement counterclaim and consolidated it with Elk's separately filed infringement action. The court then entered a final decision dismissing GAF's declaratory judgment action for lack of subject matter jurisdiction, based on the law of the case doctrine. GAF appeals from that final decision.

## DISCUSSION

■ We have jurisdiction to determine whether the district court[1] correctly held that it lacked subject matter jurisdiction over GAF's declaratory judgment action. *See* 28 U.S.C. § 1295(a)(1) (1994); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 219 USPQ 197 (Fed. Cir.1983). We review *de novo* the district court's decision concerning jurisdiction. *Benderson Dev. Co. v. United States Postal Serv.*, 998 F.2d 959, 962 (Fed.Cir.1993).

■ As the district court recognized, "[t]he existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633–34, 19 USPQ2d 1545, 1547 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991); *see* 28 U.S.C. § 2201(a) (district court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction").[2] The "actual controversy" requirement is met only if there is a justiciable case or controversy in the *constitutional* sense. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398, 222 USPQ 943, 949 (Fed.Cir.1984) ("[T]he case or controversy requirement for declara-

tory judgment jurisdiction has been defined to be the same as the case or controversy requirement in the constitutional sense."); *see Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937).

■ We normally apply a two-part test to determine whether an "actual controversy" exists in an action for declaratory judgment of patent invalidity or noninfringement:

First, the defendant in such an action must have engaged in conduct that created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. Next, the plaintiff ... must have actually produced the accused device or have actually prepared to produce such a device.

*Jervis B. Webb*, 742 F.2d at 1398–99, 222 USPQ at 949 (citations omitted).

■ GAF argues that these requirements were satisfied when it filed its declaratory judgment action. GAF had a reasonable apprehension of suit, it contends, because Elk's December 1993 letter asserted that GAF's sales of its product would "constitute an infringement of Elk Corporation's forthcoming United States design patent" and *demanded* that GAF "cease and desist from all infringing activities." GAF points out that Elk had received a Notice of Allowance from the PTO and had paid the issue fee; thus, all that remained was the issuance of the patent. Furthermore, there is no dispute that GAF was manufacturing and marketing the accused product and apparently continues to do so now.

We agree that when GAF commenced the declaratory judgment action it had a reasonable apprehension that it would be sued for patent infringement. Elk's December 1993

---

1. This appeal is from the Texas district court's final decision dismissing GAF's declaratory judgment action; however, the dismissal was based solely on the New Jersey court's prior decision concerning jurisdiction. Thus, for simplicity our references to the "district court" mean the United States District Court for the District of New Jersey, unless otherwise indicated.

2. The Declaratory Judgment Act is not a source of federal jurisdiction. *Aetna Life Ins. Co. v.*

*Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."). Thus, a statutory grant of subject matter jurisdiction under 28 U.S.C. § 1338 was also a jurisdictional prerequisite in this case. Because there was no actual case or controversy, however, we need not address the question of statutory jurisdiction under § 1338.

letter unmistakably notified GAF that Elk intended to sue GAF for infringement if GAF did not stop marketing the accused product. A demand to cease and desist is a threat. Furthermore, GAF had reason to believe that the PTO had allowed Elk's design patent application and that Elk had paid the issue fee. Thus, it was likely that a patent would issue.[3] In addition, the parties do not dispute that GAF was (and is) manufacturing and marketing the accused product. Therefore, we agree that the two established criteria for an "actual controversy" described in *Jervis B. Webb* and other cases were satisfied under the facts of this case. However, the cases which have discussed only these two requirements have involved a granted patent, such that further issues which arise in the absence of a patent were not discussed. A broader inquiry than our two-part "test" is required here because no patent had issued when the complaint was filed.

The Supreme Court has articulated basic principles for determining whether a dispute presents a justiciable case or controversy:

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins.*, 300 U.S. at 240–41, 57 S.Ct. at 464 (citations omitted).

Using these guidelines, it is clear that GAF's complaint did not present a justiciable case or controversy under Article III and § 2201 when it was filed. The complaint alleged a dispute over the validity and infringement of a possible *future* patent not then in existence. The district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk.[4] Thus, the dispute was purely hypothetical and called for an impermissible advisory opinion. Furthermore, the court could not have provided "specific relief through a decree of a conclusive character," 300 U.S. at 241, 57 S.Ct. at 464, since there was no issued patent for the court to declare "invalid" or "not infringed." A declaratory judgment of "invalidity" or "noninfringement" with respect to Elk's pending patent application would have had no legal meaning or effect. The fact that the patent was about to issue and would have been granted before the court reached the merits of the case is of no moment. Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued.

■ We therefore hold that a threat is not sufficient to create a case or controversy unless it is made with respect to a patent that has issued before a complaint is filed. Thus, the district court correctly held that there was no justiciable case or controversy in this case at the time the complaint was filed. *See Spectronics*, 940 F.2d at 636, 19 USPQ2d at 1549 ("[T]he existence of issued patent claims, presently enforceable against [the declaratory judgment plaintiff], are a

---

3. Once an applicant has paid the issue fee, "the application will not be withdrawn from issue for any reason except:
   (1) A mistake on the part of the [Patent] Office;
   (2) A violation of § 1.56 or illegality in the application;
   (3) Unpatentability of one or more claims;
   (4) For interference; or
   (5) For abandonment to permit consideration of an information disclosure statement under § 1.97 in a continuing application." 37 C.F.R. § 1.313(b) (1994).
   Thus, it is not disputed that most applications in which the issue fee has been paid issue as patents. The possibility that Elk's application

might have been withdrawn from issue for one of the above reasons therefore did not undermine GAF's "reasonable apprehension" that Elk would sue it for infringement if it continued to market the accused product.

4. Even after paying the issue fee, for example, Elk might have attempted to amend its patent application by submitting an amendment together with "a petition including the fee set forth in § 1.17(i)(1) and a showing of good and sufficient reasons why the amendment is necessary and was not earlier presented." 37 C.F.R. § 1.312(b) (1994).

requisite to litigation of a declaratory judgment action."); *Muskegon Piston Ring Co. v. Olsen,* 307 F.2d 85, 89, 134 USPQ 471, 474 (6th Cir.1962) (If there is no issued patent, "no controversy under the patent laws exists, upon which [the accused infringer] can bring an action for declaratory judgment."), *cert. denied,* 371 U.S. 952, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963).

■ GAF contends, however, that the issuance of the '144 patent cured any jurisdictional defect. We disagree. "[L]ater events may not create jurisdiction where none existed at the time of filing." *Spectronics,* 940 F.2d at 635, 19 USPQ2d at 1548. Rather, "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734 n. 2, 6 USPQ2d 1685, 1687 n. 2 (Fed.Cir.1988). It is undisputed that the '144 patent had not issued when the original complaint was filed; GAF's complaint stated as much. The subsequent issuance of the '144 patent did not cure this jurisdictional defect.

■ GAF also apparently contends that it cured the absence of subject matter jurisdiction by amending its complaint after the patent issued. GAF relies on district court decisions in which copyright plaintiffs were permitted to amend their complaints to allege the registration of their copyrights, although no registrations existed at the time the original complaints were filed. *E.g., Frankel v. Stein and Day, Inc.,* 470 F.Supp. 209, 212–13 n. 2 (S.D.N.Y.1979), *aff'd,* 646 F.2d 560 (2d Cir.1980) (table). These authorities, apart from being nonbinding on us, are unpersuasive. As explained above, there was no jurisdiction when GAF filed its original complaint. Also, GAF never moved to supplement its pleadings as required by Fed. R.Civ.P. 15(d).[5] The district court did not abuse its discretion in adhering to the motion requirement of Rule 15 or in determining that it was not in the interest of justice to

permit GAF to supplement its pleadings. Furthermore, copyright actions are unlike patent actions in terms of the time when substantive rights vest. A copyright is created when an original work is "fixed in a tangible medium of expression," 17 U.S.C. § 102 (1994); a patent does not exist until it is granted. The existence of a copyright registration is not even a prerequisite to suit under certain circumstances, *see* 17 U.S.C. § 411(a). Patent rights are created only upon the formal issuance of the patent; thus, disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance. We therefore find the copyright cases cited by GAF to be unpersuasive on the question whether there was a justiciable case or controversy at the time GAF filed its complaint.

GAF also argues that our decision in *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 935 F.2d 1263, 19 USPQ2d 1061 (Fed.Cir. 1991), supports its position that the issuance of the '144 patent cured any jurisdictional defect. We disagree. Exxon's complaint in that case alleged that the relevant patent had issued the day the complaint was filed. Lubrizol challenged jurisdiction on the ground that the patent did not legally issue on the day alleged, since the PTO did not sign and seal the patent until some time after the *Official Gazette* announced that it had issued. Applying the well-pleaded complaint rule, we held that the trial court correctly assumed jurisdiction under 28 U.S.C. § 1338, because Exxon's complaint nonfrivolously alleged the existence of an issued patent. 935 F.2d at 1265, 19 USPQ2d at 1063. Here, in contrast, GAF's complaint did not allege that a patent had issued and in fact alleged that a patent was "about to issue," *i.e.,* had not issued. Thus, the *Exxon* decision does not help GAF.

Finally, GAF contends that if the New Jersey district court lacked subject matter jurisdiction, it should have dismissed rather than transferred the case. *See Atlantic Ship Rigging Co. v. McLellan,* 288 F.2d 589, 590–91 (3d Cir.1961). Even if GAF is correct,

---

5. As the district court recognized, GAF's "Amended Complaint," alleging that the '144 patent had issued, should have been denominated a supplemental pleading, since it "set[] forth transactions or occurrences or events

which ... happened since the date of the pleading sought to be supplemented." Fed.R.Civ.P. 15(d). Supplemental pleadings are permissible "[u]pon motion of a party ..., upon reasonable notice and upon such terms as are just." *Id.*

however, any error was harmless because the case was properly dismissed by the district court in the Northern District of Texas.

We have considered GAF's remaining arguments but find them unpersuasive.

## CONCLUSION

GAF's declaratory judgment action did not satisfy the actual case or controversy requirement for federal jurisdiction and the New Jersey district court thus lacked subject matter jurisdiction. Accordingly, we affirm the Texas district court's decision dismissing the case.

*AFFIRMED.*