DISPLAY RESEARCH LABORATO-
RIES, INC.; David C. Guo; W.
Edward Naugler, Plaintiffs,

v.

TELEGEN CORPORATION; Jessica
L. Stevens, Defendants.

Telegen Corporation; Jessica L.
Stevens, Counterclaimants,

v.

Display Research Laboratories, Inc.;
David C. Guo; W. Edward Naugler,
Counterdefendants.

No. C00–4261SI.

United States District Court,
N.D. California.

Feb. 8, 2001.

Stuart C. Clark, Carr & Ferrell LLP, Palo Alto, CA, Daniel M. Linchey, Goldberg Stinnett Meyers & Davis, San Francisco, CA, for plaintiffs.

L. Donald Raub, Jr., Brooks & Raub, Palo Alto, CA, Paul Richard Brown, Black Lowe & Graham, Seattle, WA, for defendants.

## ORDER GRANTING MOTION TO DISMISS CERTAIN COUNTERCLAIMS IN FIRST AMENDED COUNTERCOMPLAINT

ILLSTON, District Judge.

On February 2, 2001, the Court heard argument on plaintiff/counterdefendant's motion to dismiss the First Amended Countercomplaint for failure to state a claim upon which relief can be granted. Having carefully considered the arguments of the parties and the papers submitted, the Court GRANTS IN PART and DENIES IN PART the motion for the reasons set forth below.

## BACKGROUND

Defendant/counterclaimant Telegen Corporation ("Telegen") is developing emissive flat panel displays based on technology involving High Gain Emissive Displays ("HGED"), Vacuum Fluorescent Displays ("VFD"), and active matrix VFDs ("AMVFD"). First Amended Countercompl. ¶ 8. Telegen claims that it owns numerous technological improvements and inventions applicable to the displays. *Id.* at ¶ 10. Plaintiff/counterdefendants David Guo ("Guo") and Edward Naugler ("Naugler") were officers of Telegen and allegedly helped develop and had access to Telegen's proprietary technology. *Id.* at ¶¶ 28–30. In or about March 1997, Guo and Naugler resigned from Telegen and subsequently established Display Research Laboratories, Inc. ("DRL") to develop, manufacture, and sell emissive flat panel displays. *Id.* at ¶ 27; Motion to Dismiss 2–3.

Telegen alleges that "DRL technology is based upon exactly the same core technology as the Telegen VFD technology, in that both derive from Active Matrix Vacuum Fluorescent Display technology." First Amended Countercompl. ¶¶ 26, 36. In support of this allegation, Telegen cites assertions made on DRL's Internet site that "DRL is a leading developer of next generation emissive flat panel displays ... [based on] state-of-the-art proprietary emissive display technology that enables extremely low-cost and hi-resolution (HDTV) display engine components for use in consumer electronic products." *Id.* at ¶ 25.

DRL initiated this litigation on July 26, 2000, seeking declaratory relief against Telegen to resolve the allegations that DRL misappropriated Telegen's proprietary technology. In response, Telegen has filed eleven counterclaims, five of which are at issue in the present motion.

In the First Counterclaim,[1] Telegen alleges that DRL has filed approximately twelve patent applications in the United States Patent and Trademark Office ("PTO"), and "some or all of those applications are for inventions that were invented by employees or principals of Telegen or otherwise owned by Telegen." *Id.* at ¶ 51. Telegen therefore seeks an order from this Court pursuant to 35 U.S.C. §§ 116 and 256, amending the applications to include the correct inventors. *Id.* at ¶ 54 and p. 22 (2nd Prayer for Relief) ("An order correcting the inventorship of all applicable DRL patent applications to properly name the Telegen inventors.").

In the Second Counterclaim, Telegen seeks declaratory judgment that DRL's patent applications and any patents issued therefrom must be assigned to the true inventors. *Id.* at ¶ 57.

In the Fifth Counterclaim, based upon statements made on DRL's web-site, Telegen alleges that DRL committed false description in violation of the Lanham Act, 15 U.S.C. § 1125(a).

In the Seventh Counterclaim, Telegen alleges that DRL misappropriated its trade secrets in violation of California Civil Code § 4326.1.

In the Eleventh Counterclaim, Telegen seeks declaratory judgment naming its employees as the true inventors of any

---

1. Telegen's eleven counterclaims were not numbered. The Court will designate the counterclaims according to the order in which they appear in the countercomplaint, accompanied by reference to each counterclaims' section heading.

patent that is issued from DRL's pending applications. *Id.* at ¶ 113.

DRL now moves to dismiss these counterclaims under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

## DISCUSSION

**A. First Counterclaim (Section VII)— Correction of Inventorship (35 U.S.C. §§ 116 and 256)**

 35 U.S.C. §§ 116 and 256 are companion statutes dealing with mistakes in naming inventors of patents. Section 116 allows for corrections to be made in patent applications, while § 256 applies to issued patents. Telegen does not allege that DRL has obtained any issued patents that supposedly omit Telegen employees. Section 256 is therefore inapplicable, and any claims made thereunder based on patents that may issue are speculative and not ripe for review. Telegen's argument that the Court "should note that with passage of time certain of DRL's applications may now have become patents" is of no avail. "Justiciability must be judged as of the time of filing, not as of some indeterminate future date when the court might reach the merits and the patent has issued." *GAF Building Materials Corp. v. Elk Corp.,* 90 F.3d 479, 482 (Fed.Cir.1996); *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 635 (Fed.Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991) ("[L]ater events may not create jurisdiction where none existed at the time of filing.").

 DRL argues that § 116, though applicable to patent applications, does not grant jurisdiction to district courts to correct an application. On its face, §· 116 authorizes only the Commissioner of Patents to make corrections on patent applications. *See* 35 U.S.C. § 116. After a patent is issued, the Commissioner can make the correction only if all parties concur; otherwise, the correction can only be made by a court. *Iowa State University Research Foundation v. Sperry Rand Corp.,* 444 F.2d 406, 408 (4th Cir.1971). Only a court can resolve a dispute over the issued patent because "[a]fter issuance of a patent, the Commissioner lacks jurisdiction over it." *Id.* (citing 35 U.S.C. §§ 141, 146). The statutes appear to contemplate court involvement in the correction process only when the Commissioner no longer has authority to act. Otherwise, § 116 would have specifically mentioned court involvement during the prosecution of the patent application. *See Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551, 1555 (Fed.Cir.

1997) ("[T]he pertinent legislative history suggests that sections 256 and 116 are to be interpreted in a uniform manner.").

■ This Court therefore finds that it does not have jurisdiction to correct a patent application under 35 U.S.C. § 116. Until a patent is issued, the Court's involvement would be premature and would encroach on the administrative function of the Commissioner. *See American General Ins. v. FTC*, 496 F.2d 197, 200 (5th Cir. 1974) (a purpose underlying the ripeness doctrine is to avoid premature interruptions of the administrative process). Telegen's reliance on *Heineken Technical Servs. v. Darby*, 103 F.Supp.2d 476 (D.Mass.2000), is misplaced. *Heineken* involved the question whether a district court had jurisdiction to grant declaratory relief concerning who was the rightful inventor of technology claimed in a patent application. The principal question in that case was whether a dispute of inventorship relating to underlying technology in a patent application sufficiently raised a federal question to support the district court's jurisdiction under 28 U.S.C. 1338(a). *Heineken* did not address the issue before this Court—whether a district court has jurisdiction to grant injunctive relief directly under § 116.

Telegen's *First Counterclaim* is DISMISSED, without leave to amend.

## B. Declaratory Judgment Counterclaims

In the Second Counterclaim, Telegen seeks declaratory relief resolving "ownership ... of approximately twelve DRL patent applications owned by Telegen and invented by Telegen employees." Response to Motion 13. Telegen alleges that its employees are the true inventors of the subject matter in the DRL applications. For this reason, Telegen seeks declaratory judgment naming it as the owner of "the patent *applications* and any patents that might issue." First Amended Countercl. ¶ 57 (emphasis added). In the Eleventh Counterclaim, Telegen also seeks declaratory relief naming its employees as the true inventors of the underlying technology in the patent applications.

### 1) Second Counterclaim (Section VIII)—Ownership of DRL Patent Applications

■ To the extent that Telegen seeks declaratory judgment of ownership or inventorship of "any patents that might issue" from the DRL applications, the claim is not ripe. "[A] patent does not exist until it is granted." *GAF*, 90 F.3d at 483; *see also DeFerranti v. Lyndmark*, 30 App. D.C. 417, 425 (1908) ("[I]n a patent, no vested right of which the applicant cannot be deprived is acquired under the preliminary proceedings leading up to its issuance.").

■ In order to establish jurisdiction for declaratory relief, Telegen must establish the existence of an actual "case or controversy," in the constitutional sense. 28 U.S.C. § 2201(a); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633–34 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991).

> A "controversy" in this sense must be one that is appropriate for judicial determination. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character.

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

Telegen relies on the inventorship correction provisions, 35 U.S.C. §§ 116 and 256, and the provision governing assignment of patents and patent applications § 261, to claim the existence of an actual case or controversy concerning ownership of the DRL patent applications. None of these statutes deals with the "controversy" which Telegen seeks to resolve through declaratory relief. Reliance on § 256 is premature because no patent has been is-

sued, and § 116 is inapplicable because Telegen asks for a declaration that it owns DRL's patent applications, not that it should be named as the inventor of the underlying technology. *See Sperry Rand,* 444 F.2d at 408 (stating § 116 "permits a bona fide mistake in joining a person as inventor or in failing to join a person as an inventor to be corrected").

■ Section 261 governs assignment of rights appurtenant to patent applications. *See* 35 U.S.C. § 261. The scope of rights conveyed in the assignment of patent rights before the granting of the patent "is much less certainly defined than that of a granted patent." *Westinghouse Electric v. Formica Insulation,* 266 U.S. 342, 352–53, 45 S.Ct. 117, 121, 69 L.Ed. 316 (1924); *see also Sarkes Tarzian, Inc. v. United States,* 159 F.Supp. 253, 256 (D.Ind.1958) (patent application, although a form of property, is only an inchoate patent right, maturing into a depreciable patent asset only when the patent issues). The Court could not find, and Telegen did not cite, any statutes or cases governing the *ownership* of patent applications which incorrectly identify the inventor of underlying technology. Declaratory relief under these circumstances is not appropriate. The Court accordingly DISMISSES the Second Counterclaim, without leave to amend.

## 2) Eleventh Counterclaim (Section XVII)—Inventorship of Technology in DRL Patent Applications

■ Telegen's Eleventh Counterclaim seeks declaratory judgment as to inventorship of the underlying technology in the DRL patent applications. This claim appears to present a cognizable case or controversy for declaratory relief because it deals with inventorship of the underlying technology in the DRL applications. Section 116 bears on this exact dispute. In *Heineken Technical Servs. v. Darby, supra,* the district court exercised jurisdiction for declaratory relief to settle an inventorship dispute to underlying technology in a pending patent application. *Heineken,* 103 F.Supp.2d at 477–79. It appears then that Telegen's Eleventh

Counterclaim presents an actual case or controversy.

■ However, the analysis does not end here. The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy. *See A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961); *Chesebrough–Ponds, Inc. v. Faberge, Inc.,* 666 F.2d 393, 396 (9th Cir.), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 277 (1982); *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir.1980). As a general rule, discretion in a declaratory judgment action is to be "exercised in the public interest" and in such a manner as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784, *reh. denied,* 333 U.S. 877, 68 S.Ct. 900, 92 L.Ed. 1153 (1948). Factors to consider include the availability of alternative remedies, the equity of the conduct of the declaratory judgment plaintiff, and the public importance of the question to be decided. *See Allstate Insurance Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990).

■ There are established processes to resolve the inventorship dispute Telegen raises. Section 116 allows the Commissioner to amend the application to name the correct inventors of the underlying technology in the DRL patent applications. If, for whatever reason § 116 does not apply, "[t]he established procedure for resolving inventorship contests is through an interference proceeding in the Patent and Trademark Office." 1 Chisum on Patents § 2.04[7][a] (West 2000); *see also* 35 U.S.C. § 256.

The Court finds that the PTO's established procedure for handling inventorship disputes is a better forum for Telegen to bring its claims. The PTO has the expertise in the matter. It also has access to much more information than what was

provided by Telegen in its counterclaims. *See National Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 703 (D.C.Cir.1971) (declining to exercise declaratory relief jurisdiction because the state of the record was inadequate to support the extent of relief sought); *cf. Heineken*, 103 F.Supp.2d at 476 (taking jurisdiction for declaratory relief over inventorship dispute concerning identified bottling technology in patent application); *GAF*, 90 F.3d at 480, 482 (finding "actual controversy" for declaratory relief over infringement dispute concerning laminated asphalt shingle in a patent application that received a Notice of Allowance from PTO). Telegen did not plead with any level of particularity the inventions or technology it believes DRL has misappropriated.

The Court finds that exercise of jurisdiction for declaratory relief is inappropriate in this case. The Eleventh Counterclaim is DISMISSED, without leave to amend.

## C. Fifth Counterclaim (Section XI)— Lanham Act Violation

 The purpose of the Lanham Act is to deter false designation of origin by "prevent[ing] individuals from misleading the public by placing their competitors' work forward as their own." *Cleary v. News Corp.*, 30 F.3d 1255, 1260 (9th Cir. 1994). Thus, the Lanham Act makes actionable only designation of origin that causes public confusion or mistake over the true proprietor of a work. 15 U.S.C. § 1125(a).

 Telegen states that "DRL has falsely or misleadingly represented to the consumer and investors that it is the owner or originator of flat panel display technology that originated with and is owned by Telegen." First Amended Countercl. ¶ 67. Conclusory allegations are insufficient to state a claim for purposes of a Rule 12(b)(6) motion. *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir.1996), *cert. denied*, 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 308 (1997). The only factual allegations supporting Telegen's Lanham Act claim are the references to DRL's web-site, which states generically that "DRL is a leading developer of next generation emissive flat panel displays ... [based on] state-of-the-art proprietary emissive display technology that enables extremely low-cost and hi-resolution (HDTV) display engine components for use in consumer electronic products." First Amended Countercl. ¶ 25.

The statements on DRL's web-site do not amount to false designation of origin. There is no claim of ownership or authorship to any proprietary work or technology, much less technology that belongs to Telegen. The statements instead describe in generic terms the type of technology that DRL is developing.

Telegen has failed to state a claim under the Lanham Act. The *Fifth Counterclaim* is DISMISSED, with leave to amend.

## D. Seventh (Section XIII) Counterclaim—Misappropriation of Trade Secrets

 In the Seventh Counterclaim, Telegen alleges that defendants Guo and Naugler misappropriated trade secrets in violation of California Civil Code § 3426 et seq. DRL argues that the misappropriation claim is barred by the applicable statute of limitations.

Under California law, misappropriation claims must be brought "within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civil Code § 3426.6. Notice to an officer or authorized agent of a corporation is generally considered as notice to the corporation. *See* Cal. Civil Code § 2332 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other.").

Telegen filed its misappropriation claim in September 2000. DRL argues that Tel-

egen's own allegations indicate that its officers or directors knew of the alleged plans to misappropriate trade secrets as early as January 1997. Section 3426.6 provides that the limitations period commences upon discovery of a misappropriation, not a defendant's plan to misappropriate. Thus, even assuming DRL's argument is correct, the statute of limitations is not a bar to DRL's misappropriation claim.

Moreover, DRL's argument that Telegen discovered Naugler's plans to misappropriate is not supported by the allegations. Telegen has alleged that around January 20, 1997, Naugler allegedly told "certain TDL staff members" of his intention to steal Telegen's emissive flat panel display technology. *Id.* at ¶ 19. This allegation does not show that an officer or director of Telegen knew about Naugler's intentions, and therefore is insufficient to warrant dismissal. Telegen also alleged that Naugler held a secret meeting on January 6, 1997, with several officers and directors where he disclosed his intention to steal Telegen's emissive flat panel display technology. First Amended Countercl. ¶¶ 13–14. Knowledge by these officers or directors cannot be imputed to Telegen, however, because it is alleged that these officers were participants to the "secret plan." *See id.* They did not acquire the knowledge in the normal scope of their duties as officers or directors. To hold otherwise would impute knowledge of misappropriation—thereby triggering the statute of limitations—whenever an officer of a corporation forms an intent to steal trade secrets.

DRL fails to demonstrate that, on the pleadings alone, Telegen's counterclaim for misappropriation of trade secrets is barred by the statute of limitations.[2] DRL's motion to dismiss the Seventh Counterclaim is DENIED.

2. This ruling is made on a motion to dismiss which focuses on the sufficiency of Telegen's pleadings. It is possible that the statute of limitations could bar the claim upon a factual showing that Telegen discovered a misappropriation of its trade secrets before the limitations period.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART plaintiff/counterdefendant's motion to dismiss. The *First, Second,* and *Eleventh Counterclaims* are DISMISSED, without leave to amend. The *Fifth Counterclaim* is DISMISSED with leave to amend. Any such amended counterclaim must be filed **no later than February 16, 2001.**

**IT IS SO ORDERED.**