WISCONSIN ALUMNI RESEARCH FOUNDATION, Plaintiff–Cross Appellant,

v.

XENON PHARMACEUTICALS, INC., Defendant–Appellant.

Nos. 2007–1026, 2007–1033.

United States Court of Appeals, Federal Circuit.

Jan. 29, 2008.

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, Circuit Judges, and RESTANI, Chief Judge.*

RADER, Circuit Judge, with whom NEWMAN, LOURIE, and MOORE,

* Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

Circuit Judges, join, dissents from the denial of the petition for rehearing en banc.

## ORDER ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

PER CURIAM.

A combined petition for panel rehearing and rehearing en banc was filed by the Appellant, and a response thereto was invited by the court and filed by the Cross Appellant. The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc and response were referred to the circuit judges who are authorized to request a poll whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for panel rehearing is denied.

(2) The petition for rehearing en banc is denied.

(3) The mandate of the court will issue on February 5, 2008.

RADER, Circuit Judge, dissenting from denial of the petition for rehearing en banc, with whom NEWMAN, LOURIE, and MOORE, Circuit Judges, join.

In an extremely short *per curiam* opinion with far too little explanation, the panel left the impression that it was giving away this court's jurisdiction over a broad swath of claims potentially arising from the Bayh–Dole Act, 35 U.S.C. §§ 200–212. While non-precedential, the panel's opinion nonetheless unnecessarily suggests that this court's jurisdiction to review these cases is limited. I respectfully dissent from this court's denial of rehearing *en banc*.

The panel concluded, albeit without much analysis, that WARF's complaint did not allege that the Bayh–Dole Act creates a cause of action. Thus it was entirely unnecessary for the panel to opine as to whether the Bayh–Dole Act is a "patent law" or not. And indeed, the Bayh–Dole Act, in my view, is most certainly a patent law. While the panel dismissed the notion that the Bayh–Dole Act's "mere inclusion" in Title 35 does not make it a "patent law," it seems to me that this is actually a pretty good indicator. After all, Title 35 is itself entitled "Patents," and Chapter 18, which encompasses only §§ 200–212, is called "Patent Rights in Inventions Made with Federal Assistance." Also, the language within some of the sections of the Bayh–Dole Act suggests its provenance as a patent law. For example, 35 U.S.C. § 201(d) defines "invention" as "any invention or discovery which is or may be patentable. . . ." Section 201(e) explains that a "subject invention" is an invention conceived of or first reduced to practice by a contractor. "Conception" and "reduction to practice" are familiar patent law terms of art. Also, § 200 states that the Act intends "to use the patent system to promote the utilization of inventions arising from federally supported research or development. . . ." The Bayh–Dole Act is, "at its heart," a patent law, albeit a patent law that employs some government contract rules to facilitate its patent-related policy objectives.

Although this court's panel opinion did not mention it, the reason that the "improvements" clause in this case does not require an infringement analysis is that the WARF/Xenon agreement features no issued patents, just patent applications. Thus, no court need perform a true infringement analysis. *See GAF Building*

*Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed.Cir.1996) (no declaratory judgment jurisdiction for infringement/invalidity of a design patent that had not issued when suit was filed; without an issued patent, there can be no infringement and thus no Article III controversy). Unlike *GAF*, however, this case features an undeniable controversy between the parties. To resolve this dispute, some court will have to compare the claims of the pending patent applications of the WARF/Xenon agreement with the alleged "improvements," and the contract's use of patent infringement parlance to define this term will necessitate some sort of patent analysis, starting with construction of the pending claims. Thus, this is a patent dispute for still another reason.