# United States Court of Appeals for the Federal Circuit

---

**STONEEAGLE SERVICES, INC.,**
*Plaintiff-Appellee,*

**v.**

**DAVID GILLMAN, TALON TRANSACTION TECHNOLOGIES, INC., A TEXAS CORPORATION,** AND **TALON TRANSACTION TECHNOLOGIES, INC., AN OKLAHOMA CORPORATION,**
*Defendants -Appellants,*

**AND**

**NEXPAY INC.,**
*Defendant.*

---

2013-1248

---

Appeal from the United States District Court for the Northern District of Texas in No. 11-CV-2408, Judge Jorge A. Solis.

---

Decided: March 26, 2014

---

BEVERLY A. WHITLEY, Bell Nunnally & Martin, LLP, of Dallas, Texas, argued for plaintiff-appellee. With her on the brief were CHRISTOPHER B. TROWBRIDGE, R. HEATH CHEEK, and ROSS A. WILLIAMS.

JAMES ROBERT ARNETT, II, of Carter Stafford Arnett Hamada & Mockler, PLLC, of Dallas, Texas, argued for defendants-appellants.  With him on the brief were EDGAR LEON CARTER and SEAN T. HAMADA.

———————————

Before RADER, *Chief Judge*, MOORE and REYNA, *Circuit Judges*.

RADER, *Chief Judge*.

On February 19 and March 20, 2013, the district court issued orders purporting to clarify a preliminary injunction and enjoining David Gillman, and two entities named Talon Technologies, Inc. (collectively Appellants) from using various materials and processes first developed by plaintiff StoneEagle Services, Inc. (StoneEagle).  Because the district court lacked jurisdiction over this case when StoneEagle initiated this lawsuit, this court vacates the proceedings below, including the preliminary injunction, and remands with instructions to dismiss the case.

I.

In 2006, Robert Allen and Gillman teamed up to adapt Allen's electronic payment system, then used in the automotive industry, to process health care claims.  As part of their collaboration, they entered into a number of agreements governing confidentiality and the parties' relationship.  The agreements provided, in part, that Allen's company, StoneEagle, owned the technology in the new health care payment system.  *See* J.A. 96–115.  As part of the collaboration, StoneEagle also licensed the technology to Appellants, who were responsible for marketing the new health care payment system to potential customers.

Allen also filed a patent application on the health care payment system.  The application listed Allen as the sole

inventor. The parties, while disputing the extent of his involvement, do not dispute that Gillman had some role in drafting the patent application. *Id.* at 68, 73. The parties also agree that Gillman assisted Allen with the patent application process. *Id.* StoneEagle asserts that, in the course of Gillman's involvement with the application, Gillman never objected to Allen's status as the sole inventor. *Id.* at 73.

Although not listed as an inventor, Gillman enjoyed an ownership interest in the patent application until at least July 2010. *Id.* at 74. On July 15, 2010, Gillman appears to have assigned his interest to StoneEagle. *Id.* at 74. The patent application issued as U.S. Patent No. 7,792,686 ('686 patent) a couple months later in September 2010.

By 2011, Allen and Gillman's collaborative relationship had soured. A meeting that occurred on or around August 31, 2011, appears to have precipitated this deterioration. Both Allen and Gillman attended the meeting; Allen as a representative from StoneEagle and Gillman as a representative of the license holder in the '686 patent. *Id.* at 80. They met with potential investors interested in the health care payment system. According to StoneEagle, the meeting showed that the potential investors considered the '686 patent very valuable. StoneEagle alleges that Gillman became upset upon hearing that the investors attributed so much value to the patent. At that point, according to StoneEagle's allegations, Gillman "suddenly and falsely claimed that it is his patent, that he wrote the patent, that it is on his computer, and that he 'authored' or 'wrote' it, or words to that effect." *Id.* Gillman allegedly threw down his business cards and left the meeting. *Id.*

On September 16, 2011, just a few weeks after this alleged outburst, StoneEagle sued Appellants. StoneEagle sought a declaratory judgment that Allen was the sole

inventor and owner of the '686 patent. StoneEagle also asserted a number of state law trade secret misappropriation claims, and requested a preliminary injunction. Less than a month later, the district court issued a preliminary injunction prohibiting Appellants from using or disclosing StoneEagle's trade secrets and confidential information. Shortly afterwards, on October 17, 2011, StoneEagle terminated its license agreement with Appellants.

According to StoneEagle, Appellants nonetheless set out to start a competing venture that would allegedly violate the injunction. Thus, in January 2012, StoneEagle moved for contempt. The district court referred the matter to a magistrate judge. The magistrate judge recommended that the contempt motion be denied because the 2011 preliminary injunction violated Fed. R. Civ. P. 65 by incorporating extraneous documents. In February 2013, the district court adopted the magistrate judge's recommendation to deny the contempt order. The district court also issued an initial order purportedly clarifying the preliminary injunction and ordering Appellants to refrain "from using any materials or processes— tangible or intangible—first developed by StoneEagle" in connection with the health care payment system. On March 19, 2013, the district court also issued a second order providing further clarification on the February 2013 order.

This appeal followed. On appeal, Appellants concede that Gillman is not an inventor of the '686 patent and argue, in pertinent part, that the district court lacked subject matter jurisdiction over the lawsuit because there was no actual controversy regarding StoneEagle's inventorship claim—the sole claim in StoneEagle's original complaint arising under federal law.

## II.

As an initial matter, StoneEagle argues that this court lacks appellate jurisdiction to review the February

2013 order because the order only clarified the 2011 preliminary injunction. This court disagrees. Under applicable regional circuit law, the February 2013 order modified the preliminary injunction because its terms are not "implicit in the terms of the original injunction." *See In re Seabulk Offshore, Ltd.*, 158 F.3d 897, 898 (5th Cir. 1998); *see also Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (distinguishing between clarifications that merely "explain" the coverage of an earlier injunction and modifications that alter the language to "relax" the earlier prohibitions). Whereas the original preliminary injunction covered all of StoneEagle's trade secrets and confidential information, including the jointly-developed technology, the February 2013 order substantively changed the scope by prohibiting Appellants from using specific types of materials and software to the extent they were "first developed" by StoneEagle. Accordingly, the February 2013 order is appealable under 28 U.S.C. § 1292(a).

## III.

Whether an actual controversy exists that is sufficient to confer jurisdiction under the Declaratory Judgment Act is a question of law that this court reviews de novo. *Dey Pharma LP v. Sunovion Pharms. Inc.*, 677 F.3d 1158, 1162 (Fed. Cir. 2012). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed." *King Pharms. Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010).

As this court has recognized, the Declaratory Judgment Act is not an independent basis for subject matter jurisdiction. *Prasco, LLC v. Medicis Pharma. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). Rather, it is a procedural vehicle that provides a remedy which is available only if the court has jurisdiction from some other source.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). For that, this court considers whether the hypothetical action that would be brought by the declaratory judgment defendant would be properly before a federal court, e.g., whether it presents a federal question. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014).

But even where a federal question is raised, the federal courts' jurisdiction is still limited by the "Cases" or "Controversies" requirement of Article III of the Constitution. *Prasco*, 537 F.3d at 1335. Relevant to the present case, the Supreme Court has explained that the phrase "case of actual controversy" in the Declaratory Judgment Act refers to this constitutional requirement. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Accordingly, to demonstrate a sufficient controversy for a declaratory judgment claim that satisfies the requirements of Article III, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

In this case, StoneEagle's declaratory judgment claim involves both ownership and inventorship. However, ownership is typically a question of state law. *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) ("[T]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts."). In contrast, inventorship is a federal question. *E.g., Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999). Thus, jurisdiction in this case turns on whether StoneEagle's complaint alleges a sufficient controversy concerning inventorship. It does not.

Even accepting StoneEagle's allegations of fact as true, and drawing all inferences in its favor, StoneEagle's

complaint does not allege a sufficient controversy concerning inventorship. Here, StoneEagle only alleges that Gillman "suddenly and falsely claimed that it is his patent, that he wrote the patent, that it is on his computer, and that he 'authored' or 'wrote' it, or words to that effect." J.A. 80. These allegations may give rise to a dispute concerning ownership, but they do not implicate inventorship. Indeed, StoneEagle does not allege that Gillman claimed he invented the health care payment system, much less conceived of the idea or contributed to its conception. Rather, StoneEagle only alleges that Gillman claims to have written the patent application.

This court has stated that assistance in reducing an invention to practice generally does not contribute to inventorship. *E.g.*, *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460, 1465 (Fed. Cir. 1998). In this case, the most favorable inference from the record in favor of StoneEagle shows only that Gillman assisted in *constructively* reducing an invention to practice. *See Solvay S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010). Those activities confer no more rights of inventorship than activities in furtherance of an actual reduction to practice. Otherwise, patent attorneys and patent agents would be co-inventors on nearly every patent. Of course, this proposition cannot be correct.

As StoneEagle's only factual allegations concerning inventorship are that Gillman authored the patent application, the complaint, viewed in its totality, has not alleged a controversy over inventorship that satisfies Article III. *Prasco*, 537 F.3d at 1338 ("Considering the totality of the circumstances, Prasco has not alleged a controversy of sufficient 'immediacy and reality' to create a justiciable controversy."). Additionally, StoneEagle did not allege any other facts existing at the time this complaint was filed which would give rise to a federal question or other cause of action properly before a federal court. *See GAF Bldg. Materials Corp. v. Elk Corp. of*

*Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).    For these reasons, the district court lacked jurisdiction over this case.  *Id.*

## IV.

Because StoneEagle did not allege an actual controversy over the inventorship of the '686 patent, the district court lacked jurisdiction over StoneEagle's declaratory judgment claim.    Additionally, because StoneEagle's complaint did not plead any facts existing when StoneEagle initiated this lawsuit that would give rise to another cause of action properly before a federal court, the district court lacked subject matter jurisdiction over the case. Accordingly, this court vacates the proceedings below, including the preliminary injunction, and remands to the district court with instructions to dismiss.

**VACATED AND REMANDED**