UNION NATIONAL BANK OF
LAREDO, Plaintiff-Appellee
Cross-Appellant,

v.

Will M. NELSON, Defendant-Appellant
Cross-Appellee.

No. 83–2702.

United States Court of Appeals,
Fifth Circuit.

Nov. 26, 1984.

Darby Riley, San Antonio, Tex., Thomas L. Even, San Antonio, Tex., for defendant-appellant cross-appellee.

Mann, Dickinson & Saldana, Frank J. Saldana, Jr., Laredo, Tex., for plaintiff-appellee cross-appellant.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case presents questions concerning the scope of federal question jurisdiction under the Federal Declaratory Judgment Act and the applicability of federal usury limitations to variable rate loans. Union National Bank of Laredo and Will M. Nelson, seek review of the decision of the district court dismissing Union's declaratory judgment complaint for lack of subject matter jurisdiction and granting Union summary judgment on Nelson's usury counterclaim. We do not decide whether the district court had jurisdiction over the complaint, but looking to the counterclaim, over which there is unquestioned jurisdiction, we find a variable rate note under federal law and that state usury law was no bar to the proposed increase in interest rate. Finally, we affirm the district court's refusal to exercise pendent jurisdiction over the state law issues in the case.

I

Union is the beneficial owner and holder of a promissory note executed by Nelson on December 22, 1977 in the amount of $250,000.00. The note is payable in monthly installments of $2,500.00, covering principal and interest, and at this rate will be fully paid in June 1993. The note contains a clause stating that the initial interest rate of 9% "is subject to annual review by Payee, and adjustment if indicated by in-

crease in Prime Rate." There is, however, limiting language in the deed of trust that secures the note:

> Nothing ... in said note contained shall ever entitle Beneficiary, upon the arising of any contingency whatsoever, to receive or collect interest in excess of the highest rate allowable by the laws of the State of Texas....

In December of 1978, presumably acting under the adjustment clause, Union raised the interest rate to 10%. Nelson made no objection and proceeded to pay that amount.[1] The interest rate was still at 10% when in November 1981 Union advised Nelson by letter that the interest rate on his note would be increased from 10% to 13%, effective December 22, the annual review date of the note. This time Nelson did not acquiesce. Nelson's attorney, in a letter to Union dated January 7, 1982, responded that a rate of 10% was the maximum lawful amount chargeable on the note, since 10% was the highest rate permitted under Texas law as of the date the note was executed. The attorney added that should

the bank not change its decision to charge 13%, "Mr. Nelson is determined to seek relief from any available source if necessary."

Union then filed a declaratory judgment action seeking a determination that the usury ceilings of 12 U.S.C. § 86a, rather than Texas law ceilings, applied to the note.[2] Nelson counterclaimed for usury under Texas law alleging that Union's November 1981 letter and its filing of the declaratory judgment suit constituted the charging of excessive interest. The district court subsequently allowed Nelson to amend his usury counterclaim to allege a violation of 12 U.S.C. § 86, the statute that provides the exclusive usury penalty for national banks.[3] The parties submitted all the relevant documentation on the loan, as well as affidavits, and each moved for summary judgment.

In deciding the motions, the district court raised *sua sponte* the question of its jurisdiction and concluded that Union's complaint did not "arise under" federal law within the meaning of 28 U.S.C. § 1331.[4]

---

1. This adjustment of the interest rate did not conflict with the deed of trust provision since the maximum lawful interest rate in Texas was 10% at the time the note was executed.

2. Section 86a sets the following ceiling for certain business and agricultural loans in excess of $1000.00, including such loans made prior to or on April 1, 1980 if they provide for a "variable or fluctuating" interest rate:

   > [N]otwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, [the lender may] take, receive, reserve, and charge on any such loan, interest at a rate of not more than 5 per centum in excess of the discount rate, including any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located.

   12 U.S.C. § 86a(a). Neither party disputes the district court's conclusion that, if applicable, § 86a would have permitted Union to charge Nelson a rate of at least 13% on his note in December 1981. As will be explained more fully in the text, *infra*, Union argues that Nelson's note is a variable rate loan to which the ceilings of § 86a apply.

3. Nelson's amendment did not alter the issues in the case. A national bank is subject to the usury laws of the state in which it is located, *see*

12 U.S.C. § 85, and if the national bank charges interest in excess of that rate, the usury penalties of 12 U.S.C. § 86 apply rather than state law. Thus while Nelson's amendment changed his counterclaim to reflect the correct penalty, it did not alter the pertinent factual question: whether Union had charged him excessive interest.

4. The district court correctly concluded that while the federal usury ceilings of § 86a, if applicable, might permit a given interest charge, the right to charge any interest at all is created by the loan contract, not federal law. *See, e.g., Superior Oil Co. v. Pioneer Corp.*, 706 F.2d 603 (5th Cir.1983) (holding that although the NGPA authorizes certain price ceilings for natural gas, it is the gas sales contract, not federal law, that creates the right to receive any price at all). Thus the court held that it lacked jurisdiction over Union's complaint because Union's underlying cause of action was a suit on the note—a state law contract claim. The anticipated defense to that claim was the Texas usury law, according to the court, and Union's defense to that defense was § 86a. The court therefore denied jurisdiction under the well-pleaded complaint rule as that doctrine was applied in *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The Court in *Mottley* held that a federal court cannot take

The court retained jurisdiction over Nelson's amended counterclaim, however, because as amended it alleged a claim under 12 U.S.C. § 86. The court granted Union summary judgment on the counterclaim, finding that although Union had "charged" interest in excess of 10% when it mailed the November 1981 letter to Nelson, such a charge was not usurious because the ceilings of 12 U.S.C. § 86a applied to the note and permitted an interest rate of at least 13%.

Both parties appeal. Union asserts that the district court erroneously dismissed its declaratory judgment complaint for lack of subject matter jurisdiction. Nelson challenges the district court's conclusion that the ceilings of § 86a apply to his note.

## II

■ We need not decide whether there was jurisdiction over Union's complaint because the district court decided the only justiciable issue presented by that complaint—whether section 86a applied to the note and authorized interest charges of at least 13% in December 1981—when it took jurisdiction over Nelson's usury counterclaim. Union argues that the question is not moot because in declining to take jurisdiction over its complaint the district court failed to answer important questions such as how section 86a usury ceilings fluctuate from time to time [5] and whether section 86a has any application after April 1, 1983.[6] While we sympathize with Union's wish to resolve these questions, Article III, Section 2 of the Constitution limits our jurisdiction to "cases" and "controversies." The Declaratory Judgment Act can extend our

power no farther. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Aside from the dispute over the interest charge of December 1981, an issue which the district court fully addressed when deciding Nelson's counterclaim, there is no constitutional case or controversy here.

The present dispute stems from Union's alleged charge of an interest rate of 13% on Nelson's note in December 1981. To decide this dispute, we must decide whether section 86a applies to the note; we need not define the manner in which the ceilings of section 86a may fluctuate in the future nor need we decide whether section 86a continues to apply to the note. These questions would be of concern to us only if Union were to charge rates above 13% and then meet resistance from Nelson in the form of a threatened usury claim under section 86. Those contingencies have not yet occurred and we cannot advise the parties on the rules which would apply to that situation until such a conflict arises or is sufficiently likely to occur that the controversy becomes real. *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 808 (5th Cir.1972); *American Fidelity & Casualty Co. v. Pennsylvania Thresherman & Farmers Mutual Casualty Insurance Co.*, 280 F.2d 453, 461 (5th Cir.1960).

## III

■ We turn now to the issue of whether a rate of 13% interest on Nelson's note was usurious. The parties do not dispute that, if applicable, 12 U.S.C. § 86a authorized an interest charge of at least 13% in

jurisdiction of a case as one "arising under" federal law if the federal issue will be raised only as a defense to the opposing party's state law claim.

5. Union's concern here apparently is to avoid additional usury suits by Nelson under § 86 should Union charge interest on the note in excess of 13% at some point in the future or should there be changes in the federal discount rate which would push the § 86a interest ceiling below 13%.

6. The applicability question arises because the ceilings created by § 86a were not permanent

preemptions of state usury laws. The federal ceilings were to apply to loans made between April 1, 1980 and April 1, 1983. A loan was "deemed to be made during [that] period," even if made prior to April 1, 1980, if the loan provided for interest at a "variable or fluctuating rate." Pub.L. 96–221, § 512. Given that Congress apparently intended that state usury ceilings be preempted only for this limited period of time, it is unclear whether, in the case of variable rate loans, the preemptive effect of § 86a continues beyond April 1, 1983.

December 1981, but whether section 86a applies to Nelson's note is a close question.[7] The statute was enacted as part of the Depository Institutions Deregulation and Monetary Control Act of 1980 as a temporary measure designed to aid banks in making business loans where their cost of funds was greater than state usury limits.[8] The statute addressed that problem by preempting state usury laws and substituting federal ceilings for certain loans. *See* 1980 *U.S.Code Cong. & Ad.News* 255–56, 308–09, 3506, 3550. While application of the provision was basically prospective—it was to apply business and agricultural loans in excess of $1000.00 made between April 1, 1980 and April 1, 1983—it also covered loans "made prior to ... April 1, 1980, [providing] for interest ... at a variable or fluctuating rate...." Pub.L. 96–221, § 512. Presumably state usury limits were impeding the ability of lenders to make necessary adjustments in the interest rates for existing variable rate loans as well as new loans.

We must decide whether the provision in Nelson's note subjecting the initial interest rate to "annual review by Payee, and adjustment if indicated by increase in Prime Rate" makes his note a variable rate loan to which the usury ceilings of section 86a apply. The meaning of "variable or fluctuating rate," as those terms are used in section 86a, have not yet been construed by the courts; the question we face is one of first impression.

Nelson offers two reasons why section 86a does not apply to his note. First, Nelson argues, the interest rate adjustment provision is too vague to be enforceable as a variable rate clause. He points out that the note lacks any formula for determining how the interest rates are to vary—that there is no index tying the rates to the prime rate or even an indication to which

---

**7.** As an alternative defense to Nelson's usury counterclaim Union challenges the district court's conclusion that Union "charged" Nelson interest of 13% when it mailed the November 1981 letter announcing its intent to raise the interest rate. The "charging" of interest, as that term is used in 12 U.S.C. § 86, has not yet been defined by the federal courts, thus the district court looked to Texas law in deciding that the 1981 letter constituted a "charge." *See Esparza v. Nolan Wells Communications, Inc.,* 653 S.W.2d 532 (Tex.App.—Austin 1983, no writ).

We are not certain that the term "charge" should be construed to encompass such conduct, but because we resolve the section 86a question in Union's favor, we need not address this problem. A finding for Union on either issue is an adequate defense to the usury counterclaim.

**8.** The Senate Report on an earlier version of section 86a, wherein preemptive federal ceilings were limited to loans made in the state of Arkansas, describes the concerns which motivated its enactment:

> *B. Business and agricultural loan ceilings*
> Like ceilings on mortgage loans, interest restrictions on business and agricultural loans have had an adverse impact on the availability of funds in States which have continued to impose such limits. The great majority of States which had ceilings below the relatively high market rates established in recent years have amended their statutes or constitutions to increase the ceilings or completely eliminate the interest lids.

> In Arkansas, with a constitutional usury ceiling on business and agricultural loans of 10 percent, the financial industry has been caught in a bind because of the high cost of funds compared to the interest they can earn....

*S.Rep. No.* 368, 96th Cong., 2d Sess. 19, *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 236, 255.

The final version of section 86a not only covered all states, but also was amended to further expand its coverage. A Senate Report on this final amendment again reflects the purpose of section 86a: allowing lenders and borrowers to respond to market forces in the face of restrictive state usury laws.

> The purpose of [the amendment] is to reduce the dollar amount of business and agricultural loans which are subject to Federal preemption of State usury laws as enacted in the Depository Institutions Deregulation and Monetary Control Act of 1980. After enactment, many inquiries were received from small bankers saying they could not supply credit to businesses and farmers because their cost of funds was greater than the State usury limit.

> This subsection will correct that problem by preempting State usury laws for all business and agricultural loans in excess of $1,000.00. [The previous coverage had begun with loans of $25,000.00.]

*S.Rep. No.* 736, 96th Cong.2d Sess. 43 *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 3550.

"prime rate" the note refers. Second, he argues, the federal usury ceilings should not apply to variable rate loans unless the parties intended that the interest rate would vary with changes in the legal maximum. Nelson relies on the provision in the deed of trust securing his loan which provides that nothing in the note authorizes interest in excess of the maximum allowed by Texas law. He asserts that this provision limits the interest rate adjustment clause so that the rate could vary, but only up to a ceiling of 10%—the Texas usury limit as of the date the note was executed—and that so construed the note is not a variable rate loan within the scope of section 86a. To apply section 86a to a variable rate loan which expressly incorporates a ceiling well below federal usury limits would, he urges, defeat the intent of the parties to the note.

While Nelson's arguments are not without force, we conclude that section 86a applies to his note. We agree with Nelson that the intent of the parties as expressed in the loan contract is central to our decision, and the intent here was to authorize variations in the interest rate over the anticipated fifteen and a half year life of the debt. While the note is ambiguous as to the limits placed upon the lender's right to unilaterally adjust the rate "if indicated by increase in Prime Rate," read most favorably to Nelson, Union at the least had the right to follow the prime rate upwards. Not only is this adjustment provision an express term in Nelson's note, his acquiescence in December 1978, when Union unilaterally raised the interest rate from 9% to 10%, confirms our construction of it. There would not necessarily be a variable rate note within the meaning of section 86a where the parties to a note simply renegotiated the interest term and established a new agreement. But where the parties' agreement at the outset contemplates that the interest rate will vary over the life of the note in at least indirect response to the forces of the money market, such as the use of a prime rate as a trigger to new negotiating rights regarding the rate or as a direct index of rate, we think section 86a applies.

It follows that Nelson's note qualifies as a variable rate note although it was not precisely indexed to the market. Nelson has not shown that there is any legal barrier—other than the usury laws—to the right of a bank or other holder of a note to adjust unilaterally the rate of interest on a loan when those are the terms to which the parties agree. Given its remedial purpose of removing legal impediments to the ability of lenders and borrowers to respond to market forces over the life of a loan, the legal definition of variable rate ought to be read expansively, and the precise mechanics of relating rate to market ought to be viewed as matters of contractual negotiation rather than as definitional limits upon the legal status of variable rate notes. Here Union's unilateral right to adjust the interest charge is limited in some sense by the prime rate, although the precise contours of that limit are matters of contractual interpretation, as is the issue of which "prime rate" is referenced by the agreement. Whatever be the answers to these contractual questions, the note remains variable in the federal sense.

That the deed of trust purports to limit the extent to which the interest rate may vary should not make the loan any less a variable rate note, at least for the purposes of section 86a. The contractual ceiling in Nelson's note references the Texas usury law, but contractual ceilings need not be so limited. A contractual ceiling might, for example, set a maximum interest rate in excess of the limits provided by state law. More importantly, section 86a sets only the usury limits for variable rate loans; it does not abrogate any contractual ceilings which may be incorporated into the note itself. Here such ceilings may bar a charge in excess of 10% on Nelson's note, but that question is one of state contract law. Any claim Nelson might have against Union based on its attempt to raise the interest rate to 13% would not be barred by virtue of section 86a but would sound in contract

rather than under the federal usury statute, 12 U.S.C. § 86.[9]

In summary, the district court correctly decided the only justiciable dispute between the parties when he found that Union did not charge Nelson usurious interest in December 1981. Because Nelson's note is a variable rate loan, the applicable usury ceilings are set by 12 U.S.C. § 86a, and all parties agree that Union's interest charges were within these federal limits. Our decision does not preclude Nelson from seeking relief in state court for breach of contract or other possible violations of state law; we decide today only that charges in excess of that amount were not barred by the federal usury laws.

AFFIRMED.

---

**9.** Nelson arguably did not give notice of a claim for breach of contract in his counterclaim, but he dispelled any uncertainty in his purpose when he addressed the issue in his motion for summary judgment. He also alleged in his motion that representatives of both Union and Stockmen's National Bank in Cotulla, the original holder of the note, had assured him that the interest rate on his note would never be greater than 10%. These allegations, if true, may also constitute violations of state law.

Union urges that such claims are barred by Fed.R.Civ.P. 13(a) for failure to plead them as compulsory counterclaims. We do not agree. We think the question of contract was before the district court. Regardless, in light of the confusion about the applicable law and whether the state law questions were inextricably intertwined with the federal questions, and now that we have determined that the state and federal questions are separable, it is plain that the district court was correct in declining pendent jurisdiction over the state law questions, the case yet being young. This permits the parties to address the state issues in state court.