905 F.2d 1176
 134 L.R.R.M. (BNA) 2533, 115 Lab.Cas. P 10,173
 OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION,
AFL-CIO, and Oil, Chemical and Atomic Workers
Local Union 6-409, Appellants,
v.
The GILLETTE COMPANY, St. Paul Manufacturing Center, Appellee.
 No. 88-5518.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1989.
Decided June 13, 1990.
 
 Karen L. Yablonski-Toll, Denver, Colo., for appellants.
 Carol A. Ellingson, St. Paul, Minn., for appellee.
 Before LAY, Chief Judge, WOLLMAN, Circuit Judge, and SNEED,* Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Oil, Chemical and Atomic Workers International Union, AFL-CIO, and its Local Union 6-409 (collectively, OCAW) appeal the district court's[1] refusal to compel The Gillette Company, St. Paul Manufacturing Center (Gillette) to arbitrate a grievance filed pursuant to a collective bargaining agreement between Gillette and OCAW. The district court dismissed the case without prejudice for lack of a case or controversy under Article 3, Section 2, of the Constitution. We affirm.
 
 
 2
 Weddell Stone started working at Gillette's plant in St. Paul, Minnesota, on November 18, 1953. On January 2, 1981, he took a leave of absence from Gillette and several days later started working at OCAW, which represents some of the employees at Gillette's plant in St. Paul. Stone returned to Gillette on May 6, 1985, where he has continued to work since that time.
 
 
 3
 Gillette established a retirement plan (Plan) in 1942, before OCAW started representing Gillette employees. The Plan is a qualified plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001, et seq., and has been amended from time-to-time. It covers OCAW employees at the St. Paul plant, as well as other non-union and union employees.
 
 
 4
 The Plan gives the Retirement Plan Committee, which is appointed by Gillette's board of directors, sole responsibility for the administration of the Plan, including procedures for making and resolving claims for benefits. The Plan requires that a participant file a claim for benefits with the Plan. The Plan also provides that denials of benefits are appealable to the Committee.
 
 
 5
 Shortly after Stone began working for OCAW, he asked Jane Erichsen, Employee Relations Administrator at the St. Paul plant, about his pension benefits under the Plan. Erichsen calculated Stone's anticipated benefits on the premise that he would not be entitled to credited service for the time spent working for OCAW. Erichsen was not a member of the Retirement Plan Committee and did not have authority to make official interpretations of or official determinations under the Plan. Stone did not seek a determination of his benefits directly from the Plan.
 
 
 6
 Section 17.0 of the collective bargaining agreement between OCAW and Gillette provides that a grievance may be referred by either party to an arbitrator. On September 7, 1987, OCAW filed a grievance on Stone's behalf, seeking a determination of whether Stone would be credited with service during the time he was on leave of absence. Gillette refused to comply with the arbitration procedures, however, stating that it would not arbitrate the grievance until Stone processed an appeal under the Plan's procedures.
 
 
 7
 In June 1988, OCAW filed an action in the U.S. District Court to compel Gillette to arbitrate the grievance. Gillette filed motions to dismiss or, in the alternative, for summary judgment. The district court issued an order denying Gillette's motions, but on its own motion dismissed the case without prejudice for lack of case or controversy.
 
 
 8
 Gillette contends that Stone's pension benefits arise solely under the Plan. OCAW, on the other hand, asserts that Stone's rights under the Plan arise under the collective bargaining agreement and that therefore Stone is not required to submit his grievance to the Plan Committee. OCAW further contends that the matter is arbitrable, regardless of whether Stone processes an appeal under the Plan.
 
 
 9
 The United States Constitution limits the federal courts' judicial power to cases and controversies. United States Const. art. III, Sec. 2. To come within the Article III definition, the controversy must be definite and concrete and not of a hypothetical or abstract character. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937). Likewise, a federal court should not pass upon issues that are not ripe for review. See Automotive, Petroleum & Allied Indus. v. Gelco Corp., 758 F.2d 1272, 1275 (8th Cir.1985).
 
 
 10
 In dismissing, the district court reasoned that since Stone had not filed a claim with the Plan and was not denied benefits, "this Court cannot properly rule on the conjectural possibility that the plan may decline his claim." We agree. If Stone applies for and is awarded benefits under the Plan, the issue of his entitlement to benefits will be moot. Thus, Stone's purported claim for benefits is not ripe for adjudication. We say purported, because at oral argument counsel for OCAW stated in response to our question that Stone's presence in the lawsuit was not necessary to create a cause or controversy. What OCAW is really seeking is a declaratory judgment that the interpretation of the Plan is subject to arbitration under the terms of the collective bargaining agreement. In the context of this case, that issue is not ripe for adjudication, there being no grievance to arbitrate under the terms of the collective bargaining agreement in the absence of any deprivation of Plan benefits to Stone--or to anyone else, for that matter. Accordingly, the district court's order of dismissal is affirmed.
 
 
 
 *
 The Honorable Joseph T. Sneed, United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota