**TRANS RAIL AMERICA, INC., Appellee,**

v.

**HUBBARD TOWNSHIP, Appellant.**

[Cite as *Trans Rail Am., Inc. v. Hubbard Twp.*, 172 Ohio App.3d 499, 2007-Ohio-3478.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2006–T–0088.

Decided July 3, 2007.

500

Walter & Haverfield, L.L.P., and Christopher L. Gibbon, for appellee.

Baker, Dublikar, Beck, Wiley & Mathews and James F. Mathews; and Harrington, Hoppe & Mitchell, Ltd., Alan D. Wenger, and Michael J. McGee, for appellant.

MARY JANE TRAPP, Judge.

{¶ 1} Appellant, Hubbard Township, appeals the Trumbull County Court of Common Pleas July 3, 2006 judgment entry, which granted declaratory relief in favor of appellee. For the following reasons, we affirm.

### Substantive Facts and Procedural History

{¶ 2} As stipulated by the parties, the facts are as follows. On July 23, 2004, appellee, Trans Rail America, Inc. ("Trans Rail") filed a complaint against Hubbard Township, seeking a declaratory judgment that appellee's property was zoned for industrial use. Trans Rail had purchased the property, which is located at 6415 Mt. Everett Road, on July 3, 2003, by limited warranty deed from Midwest Steel & Alloy Corporation ("Midwest"). Prior to the sale, Midwest had used part of the 243–acre property for the storage and dismantling of railroad cars.

{¶ 3} Sometime in 2002, the Hubbard Township Board of Trustees became aware that a number of parties were interested in purchasing the property from Midwest and that one of the prospective buyers was Trans Rail, whose intention was to purchase the property in order to run a construction and demolition debris

facility ("C & DD facility"). The board became aware of Trans Rail's purchase on August 8, 2003.

{¶ 4} On May 21, 2004, the chairman of the board, Jonathan Dowell, sent a letter to Trans Rail informing it that the property was zoned "light industrial." Thus, its application for a permit to the Trumbull County Board of Health to operate a C & DD facility would require Trans Rail to first apply for a zoning variance to change the applicable zoning to "heavy industrial."

{¶ 5} Subsequently, Trans Rail filed a complaint for declaratory judgment that the property could be used for a C & DD facility under Hubbard's zoning regulations. Specifically, Trans Rail pleaded in the alternative and requested the following relief: (1) a declaration that the property is unzoned, and thus may be used without any regard to the regulations contained in the Hubbard Township Zoning Resolution; (2) a declaration that the property is zoned "industrial" and that Trans Rail could use the subject property for a C & DD facility under that zoning classification; (3) a declaration that if the court determined the 1984 zoning amendments applied, then the property had been rezoned to the least restrictive industrial district, "heavy industrial," and thus, Trans Rail could use the subject property for a C & DD facility under that zoning classification; (4) a declaration that Trans Rail does not have to seek rezoning of the property from Hubbard Township in order to use the property as a C & DD facility; (5) a declaration that the 1994 Hubbard Township Resolution, insofar as it does not permit a C & DD facility to be operated within the Township, is unconstitutional, invalid, and/or in conflict with state law; and finally (6) other relief the court deems appropriate, as well as Trans Rail's costs.

{¶ 6} In turn, Hubbard Township filed a counterclaim seeking declaratory relief that also pleaded in the alternative and requested (1) a declaration that the property is zoned "industrial" under the 1954 zoning, except for 200 feet along Drummond Road, which remains agricultural; (2) a determination that under the 1954 zoning resolution, a C & DD facility was and is prohibited from an "industrial" zoned district; (3) a declaration that the 1983 Zoning Resolution Amendment is current and that a C & DD facility could be located within a "heavy industrial" district; (4) a determination that since the zoning resolution does not presently provide a classification for the use desired by Trans Rail, i.e., operating a C & DD facility, Trans Rail would be required to seek a zoning variance; (5) in the alternative, a declaration that Trans Rail is presently zoned under the 1983 zoning amendments as "light industrial" and therefore, a C & DD facility cannot be located on the property; and finally (6) other relief that the court deems equitable, as well as Hubbard Township's costs.

{¶ 7} In 1954, Hubbard Township passed a comprehensive zoning plan, which labeled the property "industrial." This plan is reflected both in the legislation and the zoning plat.

{¶ 8} Industrial districts under the 1954 plan are defined as follows:

{¶ 9} "A. Permitted Buildings, Structures and Uses:—1000 feet each side of any railroad right of way. In 'Industrial' Districts there shall be permitted all buildings, structures and uses permitted in any of the other districts and all other buildings, structures and uses except the following which are specifically prohibited:

{¶ 10} "1. Any process of assembly, manufacture or treatment constituting a nuisance by reason of smoke, odor, dust, or noise and including, but not limited to such things as: the manufacture or refining of asphalt; blast furnaces; the manufacture or processing of [sic] cork, fertilizer, linoleum or oilcloth and glue or gelatin; the tanning of hides and skins abatoirs and slaughter houses (except for poultry); and the manufacture of paint, oil and varnish.

{¶ 11} "2. Any process of assembly, manufacture or treatment constituting a hazardous use including but not limited to such things as the manufacture or bulk storage of fireworks and explosives; and the manufacture of illuminating gas and other explosive or poisonous gases, except as may be incidental to a permitted industrial process.

{¶ 12} "3. The storage of crude oil or any of its volatile products or other highly inflammable liquids in above-ground tanks except in accordance with State regulations in respect thereto, and provided further, that all above-ground tanks having a capacity of ten thousand (10,000) gallons or more shall be properly diked with dikes having a capacity equal to one and one-half (1 1/2) times the capacity of the tank or tanks surrounded.

{¶ 13} "4. Junk yards, automobiles, graveyards, or dissembly plants and the storage of secondhand materials for resale except entirely within a solid enclosure and not within two hundred (200') feet of any traveled highway.

{¶ 14} "5. The storage, bailing or treatment of junk, iron, rags, bottles or scrap paper, except within a building."

{¶ 15} It is undisputed between the parties that the 1954 zoning plan was properly adopted by Hubbard Township. However, the central issue in this case concerns the 1983 zoning resolution amendment and whether it was properly enacted and thus now applies.

{¶ 16} The 1983 zoning amendment purportedly redefined, among other reclassifications, the districts zoned as industrial into "light industrial" (I–1) and "heavy industrial" (I–2).

{¶ 17} The purpose stated of the "light industrial" or "I–1 District" is "to encourage the development of manufacturing and wholesale business establishments which are clean, quiet, and free of hazardous or objectionable elements such as noise, odor, dust, smoke, or glare; operate entirely within enclosed structures and generate little industrial traffic. Research activities are encouraged. This district is further designed to act as a transitional use between heavy industrial uses and other less intense business and residential uses."

{¶ 18} Further, the purpose of the "heavy industrial" or "1–2 District" is "to encourage the development of major manufacturing, processing, warehousing, and major research and testing operations. These activities require extensive community facilities, and reasonable access to arterial highways; they may have extensive open storage and service areas, generate heavy traffic but shall be prohibited if they create nuisances beyond the limitations set up by the Zoning Commission."

{¶ 19} The 1983 zoning-amendment proposal did not change the zoning map to reflect these changes. In fact, the zoning map was not revised until April 13, 2003. The revised map was later enacted by the board on November 10, 2003, in addition to the adoption of a new comprehensive plan. The zoning map now classifies the property as "light industrial."

{¶ 20} The action for declaratory relief came before the trial court on the written stipulations of facts and briefs of the parties. The court granted Trans Rail declaratory relief, finding that the property was zoned as industrial. The court found that the 1983 zoning amendment resolution was never legislatively enacted. Thus, the court held that the 1954 zoning plan applied. Further, the court expressly declared that assuming a proper state license was granted, a C & DD facility could be built on the Property, under the "industrial" zoning classification.

{¶ 21} Hubbard Township timely appealed and now raises the following two assignments of error:

{¶ 22} "[1.] The trial court erred in its judgment entering declaratory relief in favor of the appellee, by declaring the appellee's real property subject to permitted "light industrial" and "heavy industrial" uses under the Hubbard Township zoning resolution, to appellant's prejudice.

{¶ 23} "[2.] The trial court usurped the role of the Hubbard Township administrative authorities when it determined that the operation of a construction and demolition debris facility would be an authorized use of appellee's real property located in Hubbard Township, to appellant's prejudice."

{¶ 24} As an initial matter, we stress that nothing in this opinion or in the judgment of the trial court grants Trans Rail carte blanche to begin operating a

C & DD facility, as the dissent would suggest. Rather, what we are affirming today, and what the trial court did in its grant of declaratory relief, is a simple matter and does not raise the issues of state licensing and preemption of local zoning authority, as the dissent believes. Quite simply, those issues are not before the court. However, the dissent seems to believe that because Trans Rail intends to build a C & DD facility, it should somehow be treated differently from all other zoning-classification-determination cases in the history of our state. All that is being affirmed today is the trial court's finding that a zoning classification applies to a certain property, which necessarily includes the finding of whether a C & DD facility fits under that zoning definition or whether the party would need to seek a zoning variance before initiating the permit process. Accordingly, before the proposed C & DD facility can begin operation, Trans Rail must submit itself to the proper licensing and regulatory authorities.

{¶ 25} We review questions of law de novo. *Long Beach Assn. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208; *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286. Under a de novo standard of review, the appellate court reviews the judgment "independently and without deference to the trial court's determination." *Kovacic v. Eastlake,* 11th Dist. No. 2005–L–205, 2006-Ohio-7016, 2006 WL 3833872, at ¶ 56.

{¶ 26} "Zoning ordinances are in derogation of the common law. They deprive a property owner of uses of his land to which he would otherwise be entitled and, therefore, when interpretation is necessary, such enactments are normally construed in favor of the property owner." *Nelson Twp. Bd. of Trustees v. Soinski,* 11th Dist. No. 2002-P–0130, 2003-Ohio-6418, 2003 WL 22844258, at ¶ 24, citing *Cash v. Brookshire United Methodist Church* (1988), 61 Ohio App.3d 576, 579, 573 N.E.2d 692. Further, "[a]mbiguity must be construed against the zoning resolution because it is a police power exercise that constricts property rights." *Freedom Twp. Bd. of Zoning Appeals v. Portage Cty. Bd. of Mental Retardation* (1984), 16 Ohio App.3d 387, 390, 16 OBR 456, 476 N.E.2d 360.

{¶ 27} In appellant's first assignment of error, appellant contends that the trial court erred in declaring that the property is zoned "industrial." Appellant argues that the court erred by finding that Hubbard Township did not properly enact the 1983 zoning-amendment resolution and that the 1954 zoning plan applies to the property, which accordingly, zones the property "industrial." We affirm the judgment of the trial court.

{¶ 28} R.C. 519.12 dictates the procedure that Hubbard Township should have followed in order to properly zone the property "light industrial." The proper procedure for enacting a zoning resolution as applied to this case begins with

R.C. 519.12(A)(2), which states: "Upon the adoption of a motion by the township zoning commission, the certification of a resolution by the board of township trustees to the commission, or the filing of an application by property owners or lessees as described in division (A)(1) of this section with the commission, *the commission shall set a date for a public hearing,* which date shall not be *less than twenty nor more than forty days* from the date of the certification of such a resolution, the date of adoption of such a motion, or the date of the filing of such an application. Notice of the hearing shall be given by the commission by one publication in one or more newspapers of general circulation in the township at least ten days before the date of the hearing." (Emphasis added.) The notice requirements for text amendments to zoning plans are outlined in R.C. 519.12(D).

{¶ 29} Within 30 days of the public-zoning-commission hearing, the zoning commission shall recommend its approval or denial of the proposed amendment to the board. R.C. 519.12(E). The board, upon receipt of the recommendation, *will within 30 days set a public hearing and issue notice,* pursuant to the notice requirements of R.C. 519.12(G) of the hearing on the proposed amendment. See R.C. 519.12(E).

{¶ 30} Within 20 days of the board's public hearing, the board will either adopt or deny the zoning commission's recommendations. If the resolution is adopted by the board, it will become effective 30 days after the date of its adoption unless registered electors sign a petition to act otherwise. R.C. 519.12(G).

{¶ 31} It is undisputed that the 1983 zoning-amendment proposal was never enacted by subsequent legislation of the board pursuant to the procedures of R.C. 519.12. The 1983 amendments were an attempt to change the text of the zoning plan. However, no notice or meeting was held either by the zoning commission or the board, as required by statute. No legislation was enacted by the board subsequent to the proposal, nor was the zoning map amended to reflect the changes in zoning classifications.

{¶ 32} Hubbard Township correctly notes that "[t]he zoning resolution, as opposed to the map controls as to zoning designation." *Kroeger v. Std. Oil Co. of Ohio, Inc.* (Aug. 7, 1989), 12th Dist. Nos. CA88–11–086 and CA88–11–087, 1989 WL 87837, at *7. See *In re Application of McDaniels Motor Co.* (1962), 116 Ohio App. 165, 170, 22 O.O.2d 17, 187 N.E.2d 418. "[C]hanging the zoning map is a procedural matter occurring after the zoning decision is made. Once the trustees have taken *legislative action,* the clerk's failure to perform a ministerial act is not a defect that invalidates the action." Id., citing *Bd. of Twp. Trustees v. Spring Creek Gravel Co.* (1975), 45 Ohio App.2d 288, 290–291, 74 O.O.2d 409, 344 N.E.2d 156. Thus, failure to designate the zone change on the zoning map does not invalidate a properly passed legislative zoning amendment.

{¶ 33} However, the fatal flaw in Hubbard Township's 1983 zoning change is not the failure to make the requisite changes to the zoning map after the 1983 zoning amendment proposal. Indeed, if Hubbard Township had followed the proper procedures pursuant to R.C. 519.12, then the property would have been zoned as "light industrial," and the failure to reflect the change in the zoning map would not have been fatal, but merely an administrative error.

{¶ 34} The problem in this case is that the 1983 zoning amendment proposal is not an act of legislation, but is merely a proposal by the zoning commission. This zoning proposal was never discussed in a public hearing, either by the commission or the board, nor was it formally adopted by the board. Thus, we agree with the trial court and determine that the 1983 zoning amendment proposal does not apply because it was not properly enacted. Thus, the 1954 zoning plan controls. Since the 1954 zoning plan zoned the property "industrial," this classification must prevail. See *Merriman Constr. Co. v. Geauga Cty. Bd. of Commrs.* (May 19, 1980), 11th Dist. No. 835, 1980 WL 352163, in which this court held that because the Geauga County Commission zoning amendments improperly changed the goals and guidelines in the general land-use plan and were not regulations enacted in accordance with a comprehensive plan for the purpose of promoting the public health, safety, and morals, the prior properly enacted zoning amendments applied.

{¶.35} Furthermore, we note that attached to the stipulation of facts is a letter from the Secretary to the Director of the Trumbull County Planning Commission, dated February 27, 1997. The letter requests the director for a zoning-variance recommendation on the property, which is adjacent to the east side of the property, because the owner of that property was requesting a change from "Agricultural/Residential" to "Light Industrial." In reference to the properties abutting that property, the letter stated the following of the property which is at issue in this case: "The property east of Mt. Everett Road is zoned for heavy industry and until recently was occupied by Mid West Steel Corporation for the purpose of cutting up old railroad cars for scrap." Thus, in 1997, four years after the zoning amendment proposal, the property was identified by Hubbard Township as "heavy industrial."

{¶ 36} Appellant's first assignment of error is without merit.

### Permitted Facilities in an Industrial Zone

{¶ 37} In the second assignment of error, Hubbard Township contends that the trial court erred in declaring that a C & DD facility can be built on the property because it is zoned "industrial." Thus, Hubbard Township argues that the court usurped the administrative authority of the board in declaring that a C & DD facility can be built, assuming the proper state permits are granted, in an area zoned "industrial." We reject this contention.

{¶ 38} "R.C. 2721.02 states that 'courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Cincinnati Cent. Credit Union v. Benson* (1998), 130 Ohio App.3d 755, 762, 721 N.E.2d 410. Under this provision, courts have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. Id., citing *Coshocton Real Estate Co. v. Smith* (1946), 147 Ohio St. 45, 33 O.O. 241, 67 N.E.2d 904.

{¶ 39} To be entitled to declaratory relief, Trans Rail must demonstrate that "(a) real controversy between the parties exists, (b) the controversy is justiciable, and (c) speedy relief is necessary to preserve the rights of the parties." *Cincinnati Cent.*, citing *Ohio Assn. of Life Underwriters, Inc. v. Duryee* (1994), 95 Ohio App.3d 532, 534, 642 N.E.2d 1145.

{¶ 40} Trans Rail sufficiently alleged a cause of action for declaratory judgment to the extent that it requested a declaration of rights that were not determined as it relates to Trans Rail's property and how it may be used. Further, it is within the full authority of the court to declare whether a permitted use for certain property is properly permitted under a zoning classification. See *Sammons v. Batavia* (1988), 53 Ohio App.3d 87, 557 N.E.2d 1246, in which the court held that an R–1 residential zoning classification, which permitted "service type use," allowed the operation of a court-reporter business. See, also, *Elbert v. Bexley Planning Comm.* (Nov. 2, 1995), 108 Ohio App.3d 59, 670 N.E.2d 245, in which the court held that a proposed restaurant was permitted use under a zoning ordinance that permitted retail services to include "eating places." See, also, *Modular Custom Homes, Inc. v. Sandusky* (Jan. 29, 1983), 6th Dist. No. E–82–31, 1983 WL 13820, and *Freedom Twp. Trustees v. Community Concern of Toledo, Inc.* (Nov. 27, 1981), 6th Dist. No. WD–81–65, 1981 WL 5833.

{¶ 41} Whether or not Trans Rail receives a proper permit from the state or approved county health board to run a C & DD facility is another matter entirely that does not preempt the authority of the court to declare whether a zoning classification applies to certain property as the dissent suggests. In a similar case, *Clarke v. Warren Cty. Bd. of Commrs.*, 12th Dist. No. CA2005–04–048, 2006-Ohio-1271, 2006 WL 689039, ¶ 27, the court remarked: "[T]he [Ohio] legislature intended for the state through the Ohio EPA to preempt and solely occupy the licensing and regulation of solid waste disposal and sanitary landfill facilities. However, local zoning does play a pivotal role in the installation and chartering of these facilities. Once the Ohio EPA has granted approval, its permit is subject to those local zoning provisions which do not conflict with the environmental laws and regulations approved by the state."

{¶ 42} We determine this reasoning persuasive. We affirm, because we determine that the trial court acted within its authority in declaring that a C & DD facility would be permitted on a property zoned "industrial."

{¶ 43} The judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

O'NEILL, J., concurs.

GRENDELL, J., concurs in part and dissents in part.

DIANE V. GRENDELL, Judge, concurring in part and dissenting in part.

{¶ 44} With regard to appellant's first assignment of error, I concur with the majority's conclusion that appellant did not properly effectuate the 1983 zoning resolution, and therefore, it was of no force and effect. Accordingly, the trial court properly declared that the 1954 "industrial" zoning designation was applicable to the subject property.

{¶ 45} Unlike the majority, however, I believe that the trial court exceeded its authority by declaring that "a C & DD facility would be permitted on a property zoned 'industrial,'" because there was no evidence that the court examined the applicable zoning regulation before making its decision. Based upon the law and the record, the only reasonable conclusion is that the trial court predicated its decision upon the assumption of a state license or permit that has not been, and may not ever be, issued. Because this preemptory action is impermissible within the context of a declaratory judgment action, I respectfully dissent.

{¶ 46} The majority stresses that "nothing in this opinion or in the judgment of the trial court grants Trans Rail a carte blanche to begin operating a C & DD facility." Unquestionably, the majority and lower court judgment give Trans Rail carte blanche to ignore and circumvent compliance with Hubbard's 1954 zoning. There is nothing "simple" about this judicial derogation of township zoning authority.

{¶ 47} While the trial court correctly reached the conclusion that the 1954 zoning resolution applied to Trans Rail's property, it concluded that "under the 'Industrial' Classification, Plaintiff would be permitted to operate a C & DD facility on the property *upon obtaining a license for the same from the proper state authorities.*"

{¶ 48} The trial court reached this conclusion, notwithstanding the fact that Trans Rail's counsel admitted that Trans Rail had applied for a license to operate a C & DD facility pursuant to R.C. Chapter 3714, but that such license "has not been issued."

{¶ 49} R.C. Chapter 3714 is a general law governing the licensing and regulation of C & DD facilities throughout the state of Ohio. *Sheffield v. Rowland* (1999), 87 Ohio St.3d 9, 11, 716 N.E.2d 1121. The Supreme Court of Ohio has held that when the requirements of R.C. Chapter 3714 are met and a license is issued thereunder, any zoning regulation that prohibits the operation of such a facility is in "direct conflict," and thus, "the state regulation prevails." Id. at 12–13, 716 N.E.2d 1121. The trial court, by concluding that Trans Rail would be permitted to operate a C & DD facility "upon obtaining a license from proper state authorities," unwittingly brings the preemption issue into play when the zoning-compliance issue itself has never been raised or examined under the 1954 amendment.

{¶ 50} In the instant matter, we have determined that appellee's property is governed by the 1954 amendment to the zoning resolution. The relevant portion of that resolution states as follows:

{¶ 51} "In 'Industrial' Districts there shall be permitted all buildings, structures and uses permitted in any of the other districts and all other buildings, structures and uses *except the following which are specifically prohibited:*

{¶ 52} "1. Any process of assembly, manufacture or treatment constituting a nuisance by reason of smoke, odor, dust or noise * * *.

{¶ 53} " * * *

{¶ 54} "4. Junk yards * * * or dissembly plants and the storage of secondhand materials for sale except entirely within a solid enclosure and not within two hundred (200') feet of any traveled highway." (Emphasis added.)

{¶ 55} Under these terms, Trans Rail would arguably be prohibited from operating a C & DD facility under Hubbard Township's 1954 zoning resolution absent state licensure. As such, I agree with the Twelfth District's conclusion in Clarke, as adopted by the majority, that "local zoning does play a pivotal role in the installation and chartering of [solid waste disposal and sanitary landfill] facilities." *Clarke v. Warren Cty. Bd. of Commrs.*, 12th Dist. No. CA2005–04–048, 2006-Ohio-1271, 2006 WL 689039, ¶ 27. However, the majority's opinion conveniently ignores the fact that it is only "[o]nce the Ohio EPA *has granted approval*" for the operation of a CD & D facility that the court can determine which provisions of local zoning "do not conflict with the environmental laws and regulations approved by the state." (Emphasis added.) Id.

{¶ 56} Unfortunately, Trans Rail offered no evidence that it made any application or inquiry to township zoning authorities regarding the operation of a CD & D facility on the subject property under either an "industrial" or "heavy industrial" designation, nor has it offered any proof that such application would be denied under the terms of the 1954 zoning amendment. Before the C & DD

facility can begin installation, *not* operation, Trans Rail must first apply to Hubbard for a zoning certificate and then, or contemporaneously therewith, apply to the appropriate licensing and regulatory authorities. Unfortunately, this process has been taken out of the Township's hands by the trial court.

{¶ 57} The majority concludes that the issues of state licensing and preemption of local zoning "are not before the court." I agree. That is precisely why the lower court did not have authority to determine that Trans Rail's demolition facility would be an authorized use under Hubbard's 1954 zoning resolution. The issue is not preemption, but *compliance.* Since Trans Rail has not applied to Hubbard for a zoning certificate, the trial court did not have authority to adjudicate zoning compliance. Trans Rail should be treated like "all other zoning classification determination cases in the history of our state." Such treatment requires the proposed user to apply to the township for confirmation of zoning compliance. Historically, trial judges have not been imbued with this zoning power.

{¶ 58} While the statute governing declaratory judgment actions "grants the general authority to test the construction of a law, there must exist a justiciable issue for declaratory relief to ensue." *State ex rel. Bolin v. Ohio Environmental Protection Agency* (1992), 82 Ohio App.3d 410, 415, 612 N.E.2d 498. In order to grant declaratory relief, there must exist " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 303 N.E.2d 871, quoting *Aetna Life Ins. Co. v. Haworth* (1937), 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617.

{¶ 59} In the instant matter, only one justiciable issue exists. The trial court properly determined, by means of a declaratory judgment action, which version of the township zoning amendment was valid. The extent of the trial court's authority ends there.

{¶ 60} Simply put, the trial court cannot declare that a C & DD facility may be operated on the property without having considered the preemption issue, and the preemption issue is not ripe for the court's consideration until such time as a state license or permit to operate the C & DD facility has actually been issued.

{¶ 61} As to Trans Rail's rights under the 1954 zoning as applied to its property, the issue of zoning compliance is, likewise, not ripe, because the township raised Trans Rail's failure to exhaust its administrative remedies as an affirmative defense, and there is no evidence that Trans Rail made an application or submitted its plans to the township for its administrative zoning review. See *Clagg v. Baycliffs Corp.* (1998), 82 Ohio St.3d 277, 281, 695 N.E.2d 728 ("When * * * the affirmative defense of failure to exhaust administrative remedies is

applicable and has been timely raised and maintained, a court will deny declaratory * * * relief"); see, also, *Warwick v. DeWitt* (Jan. 15, 2002), 4th Dist. No. 01CA2613, 2002 WL 59667, at *2.

{¶ 62} I agree with the majority that "local zoning does play a pivotal role in the installation of these [landfill] facilities." The majority's decision, however, deprives Hubbard Township of the opportunity to play that pivotal role by allowing Trans Rail to circumvent the local zoning-review process. For that reason, I disagree with the majority on this issue.

{¶ 63} For these reasons, I would affirm the trial court's judgment with regard to its determination of the applicable zoning designation, but I would reverse and remand with regard to the zoning-compliance and preemption issues.